UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. _____

PATRICIA MELLNITZ,

      Plaintiff,

v.

CARNIVAL CORPORATION,
SUN BAHAMAS WATER SPORTS d/b/a
BAHAMAS STORAGE AND SHIPPING
SUPPLIES COMPANY LTD., and
XYZ CORPORATION,

      Defendants.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff sues Defendants and alleges:

### PRELIMINARY ALLEGATIONS

1.   The Plaintiff, PATRICIA MELLNITZ, is a citizen of New York.

2.   Defendant, CARNIVAL CORPORATION (hereinafter "Carnival"), is a foreign entity with its principal place of business in Florida.

3.   Defendant, SUN BAHAMAS WATER SPORTS d/b/a BAHAMAS STORAGE AND SHIPPING SUPPLIES COMPANY LTD., upon information and belief, is an entity based in Bahamas.

4.   Defendant, XYZ CORPORATION, is included to represent the owner(s) and/or operator(s) of the subject excursion, insofar as such entity has a different name than the named Defendants herein. According to Carnival, the "tour operator" of the subject excursion is SUN BAHAMAS WATER SPORTS d/b/a BAHAMAS STORAGE AND SHIPPING SUPPLIES

COMPANY LTD.  In the event discovery reveals different and/or additional entities contributed to the ownership, operation, and/or management of the subject excursion, the legal names of the entities will be substituted for XYZ CORPORATION.

5.   The matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. § 1332.  In the alternative, if diversity jurisdiction does not apply, then this matter falls under the admiralty and maritime jurisdiction of this Court.

6.   The causes of action asserted in this Complaint arise under the General Maritime Law of the United States.

7.   Defendants, at all times material hereto, personally or through an agent:

   a.   Operated, conducted, engaged in or carried on a business venture in this state and/or county or had an office or agency in this state and/or county;

   b.   Were engaged in substantial activity within this state;

   c.   Operated vessels in the waters of this state;

   d.   Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193;

   e.   The acts of Defendants set out in this Complaint occurred in whole or in part in this county and/or state.

   f.   Defendants were engaged in the business of providing to the public and to the Plaintiff in particular, for compensation, vacation cruises aboard their vessel.

8.   Defendants are subject to the jurisdiction of the Courts of this state.

**<u>The Excursion Entities' activities in Florida satisfy a finding<br>of specific jurisdiction under Florida Statute § 48.193(1)(a).</u>**

9.   At all times material hereto, the activities of Defendants, SUN BAHAMAS WATER SPORTS d/b/a BAHAMAS STORAGE AND SHIPPING SUPPLIES COMPANY LTD and

XYZ CORPORATION (hereinafter collectively referred to as the "Excursion Entities" in a manner so as to retain each Defendant's separate and individual liability in the event said Defendants are severed) in Florida satisfy the specific jurisdiction provision of Florida Statute § 48.193(1)(a), by acts that include, but are not limited to, (a) reaching out to Florida-based cruise lines, insurers, cruise industry associates, and/or premium financing companies for purposes of operating, conducting, engaging in, or carrying on a business or business venture in this state; and/or (b) contractually agreeing to indemnify Florida-based cruise lines (entities mostly located in Miami and Ft. Lauderdale) for any harm resulting to cruise passengers, thereby insuring a "person, property, or risk located within this state."

**The Excursion Entities' contract with Carnival meets all requirements to satisfy a finding of specific jurisdiction under Florida Statute § 48.193(1)(a)(9).**

10. At all times material hereto, the Excursion Entities entered into a contract with Carnival concerning the subject excursion, which (a) contains a choice-of-law clause designating Florida law as the governing law; (b) contains a provision whereby the Excursion Entities agree to submit to the exclusive jurisdiction of the courts of Florida; (c) involves consideration of not less than $250,000 or relate to an obligation arising out of a transaction involving in the aggregate not less than $250,000; (d) does not violate the U.S. Constitution; and (e) has at least one party of the contract that is a resident of Florida or incorporated under the laws of Florida. Therefore, the contract between Carnival and the Excursion Entities meets all requirements to satisfy a finding of specific jurisdiction under Florida Statute § 48.193(1)(a)(9).

**The Excursion Entities' continuous and systematic general business contacts with Florida satisfy a finding of general jurisdiction under Florida Statute § 48.193(2).**

11. At all times material hereto, the Excursion Entities have engaged in substantial and not isolated activity within this state, including, but not limited to: (a) reaching out to cruise lines in Florida and establishing long-term partnerships with them; (b) deriving a substantial portion of

their revenues from their business with Florida-based cruise lines; (c) periodically traveling to Miami to meet with cruise line executives for purposes of maintaining the business relationships and/or obtaining new business; (d) procuring insurance through companies in Florida; (e) maintaining Florida entities as "Agents of Record" for insurance purposes; (f) agreeing to insure and indemnify entities in Florida; (g) signing premium financing agreements with Florida entities in order to obtain a loan to pay for liability insurance premiums; (h) buying parts and/or supplies from Florida-based suppliers to operate their excursions; (i) signing powers of attorney and/or appointing attorneys-in-fact in Florida to carry out their Florida operations; (j) participating in cruise industry trade shows in Miami (e.g., Sea trade); and/or (k) maintaining active membership in Florida Caribbean Cruise Association, based in Florida.

12. At all times material hereto, the Excursion Entities have been in the business of providing excursions to cruise line passengers in the Dominican Republic through Florida-based cruise lines, including Carnival, Royal Caribbean, Celebrity and/or NCL. In entering into contracts with these Florida-based cruise lines, the Excursion Entities agree to the exclusive jurisdiction of courts in Florida. Additionally, by being under contract with the Florida-based cruise lines, the Excursion Entities receive the benefit of the cruise lines' advertising and promotional efforts.

13. At all times material hereto, the Excursion Entities' arrangement with the Florida-based cruise lines and the circumstances of this case are markedly different than those at issue in *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014). Herein, unlike *Daimler*, the Plaintiff is suing a Florida-based cruise line (Carnival) for injuries sustained while participating in an excursion operated by agents of the cruise line (the Excursion Entities) -- agents set up almost exclusively to do business with cruise lines (a majority of which are based in Florida). Further unlike *Daimler*, Carnival is "at home" in this jurisdiction because Carnival maintains its principal place

of business in Florida.  Thus, under *Daimler*, the Excursion Entities are also deemed "at home" in this jurisdiction by their direct and indirect contacts with Florida (through the Florida-based cruise lines).

**The Excursion Entities' activities in Florida satisfy<br>a finding of jurisdiction under Fed. R. Civ. P. 4(k).**

14. At all times material hereto, the Excursion Entities are also subject to jurisdiction pursuant to Federal Rule of Civil Procedure 4(k)(2) because (a) the instant maritime tort claims arise under federal law; (b) the Excursion Entities are not subject to jurisdiction in any state's courts of general jurisdiction; and (c) exercising jurisdiction over the Excursion Entities is consistent with the United States Constitution and laws based on the Excursion Entities' minimum contacts with the United States as a whole such that the maintenance of this lawsuit does not offend traditional notions of fair play and substantial justice.  These minimum contacts are set forth in the above allegations, and include, but are not limited to, the Excursion Entities' location and operation in the United States, as well as marketing, promoting, and selling tickets for its excursions in the United States directly and/or through cruise lines as their agents located all over the United States.

**FACTS COMMON TO ALL COUNTS**

15. At all times material hereto, Carnival owned, operated, managed, maintained and/or controlled the vessel, *Carnival Victory*.

16. At all times material hereto, the Excursion Entities owned and/or operated the subject excursion, which was offered, arranged for, sponsored, recommended, marketed, sold, co-operated and/or managed by Carnival.

17. On or about December 9, 2017, Plaintiff was a paying passenger aboard the *Carnival Victory*, which was in navigable waters.

**Promotional Material and Statements Concerning**
**Shore Excursions Generally and the Subject Excursion Specifically**

18. After booking the subject cruise, Carnival sent Plaintiff promotional material, which provided information and descriptions of shore excursions, including the excursion entitled, "Ultimate Island Snorkel" (hereinafter "subject excursion").

19. In addition to the promotional material sent to Plaintiff, Carnival's website contained information and descriptions of shore excursions, including the subject excursion. Tickets for shore excursions, including the subject excursion, were also available for sale on Carnival's website.

20. Once Plaintiff was aboard the subject vessel, Carnival conducted a live presentation to passengers, during which Carnival discussed all of the excursion options available to passengers during the cruise. The subject excursion was among the excursions discussed at the presentation.

21. Carnival also had promotional materials at its shore excursion desk aboard the cruise ship and/or other areas of the ship with information and descriptions of shore excursions, including the subject excursion. Tickets for shore excursions, including the subject excursion, were also available for sale on Carnival's shore excursion desk aboard the cruise ship.

22. The information and/or material Carnival made available and/or distributed to the Plaintiff represented that the excursions, including the subject excursion, were operated and/or overseen by Carnival and/or they were safe. For example:

  a. Carnival's website publicly described the shore excursions in proprietary language, including, but not limited to, "our excursions."

  b. Carnival represented in its website that it "take[s] care of all the details and wait[s] for all Carnival excursions to return before departing."

c.  Carnival's website stated that Carnival "hand selected the best local providers at
every port of call," and Carnival recommended that passengers not engage in
excursions, tours or activities that were not sold through Carnival.

d.  Carnival represented in its promotional material (including its website) that its
excursion providers are "reliable [and] reputable," that all shore excursions were
"guided," and that Carnival selects its excursion providers because they have the
"best reputation" in their respective ports.

e.  Carnival's website stated that passengers should book the excursions sold through
Carnival because the providers are "required to carry insurance," without
providing any details as to the adequacy or limits of such insurance.

23. Among Carnival's promotional material concerning shore excursions, including the
subject excursion, Carnival's website contained reviews for each excursion, which were posted
by passengers.  Notably, however, Carnival controls the information passengers disseminate
about the excursions.  For instance, Carnival's website directs passengers to refrain from
mentioning competitors, prices, and promotions, and to avoid writing about customer service
issues related to the excursion.  Carnival also alters and/or deletes passengers' reviews that
contain complaints and/or information concerning safety concerns and/or prior incidents that
have occurred while participating in the excursion.  As a result, when passengers (like the
Plaintiff) read the reviews on Carnival's website, they are under the impression that the
excursion is safe because the vast majority (if not all) of the reviews Carnival chooses to leave
on the website are positive, without any complaints about customer service, negative experiences
and/or prior incidents.

24. With regard to the subject excursion specifically, Carnival's promotional material and
information did not require or recommend any particular level of experience to participate in the

excursion.  By comparison, other excursions with high speed boat rides were classified as "[e]xtreme" or "[d]ifficult", (see i.e.: Adrenaline Jetboat Adventure; Mini Speedboat & Snorkeling Adventure; Surf & Turf, 4x3 Terracross & Speed Boat; etc.)  The subject excursion, however, was classified as "[m]oderate". Further, Carnival's promotional material and information did not contain adequate warnings and/or reviews from other passengers about customer service, negative experiences and/or prior incidents.

25. The information and/or material Carnival made available and/or distributed to passengers concerning shore excursions, including the Plaintiff concerning the subject excursion, was based on the description and/or information provided to Carnival by the Excursion Entities and/or by Carnival's inspections and/or approval of the subject excursion and/or of the Excursion Entities.   Accordingly, Defendants undertook a duty to accurately advise passengers, including the Plaintiff, concerning the subject excursion in order to obtain a profit for Defendants, and Defendants were required to execute that duty utilizing reasonable care under the circumstances.

### Subject Incident

26. Relying on the safety and reputability of Carnival as well as Carnival's representations regarding its shore excursions, including the subject excursion, Plaintiff purchased tickets for the subject excursion directly from Carnival.  The Plaintiff obtained all of the information regarding the subject excursion from Carnival and made all of the reservation arrangements for the subject excursion exclusively with Carnival.  In turn, Carnival received a portion of Plaintiff's ticket price for the subject excursion.

27. The Plaintiff reviewed Carnival's information and/or material concerning the subject excursion and relied upon Carnival's representations exclusively and to Plaintiff's detriment in deciding to purchase the subject excursion from Carnival and to participate in same during Plaintiff's cruise aboard the *Carnival Victory*.

28. Based upon Carnival's information and/or material concerning the subject excursion, Plaintiff reasonably understood that Carnival conducted regular inspections of the facilities, equipment, operations and operators of the subject excursion to ensure that they were reasonably safe, and Plaintiff relied upon such understanding to Plaintiff's detriment in deciding to purchase the subject excursion from Carnival and to participate in same during Plaintiff's cruise aboard the *Carnival Victory*.

29. On or about December 9, 2017, as part of Plaintiff's cruise aboard the *Carnival Victory*, Plaintiff participated in subject excursion in Nassau, Bahamas. This excursion was arranged for, sponsored, recommended, operated, marketed and/or sold by Carnival as part of the cruise aboard the *Carnival Victory* vessel.  Unbeknownst to Plaintiff at the time, the excursion was operated by the Excursion Entities.

30. At the beginning of the excursion, the tour guides did not provide sufficient instructions or safety guidelines to participants (including Plaintiff) concerning how to properly secure themselves in the high speed boat.  Then, the boat was operated in a high speed manner, over wakes, waves, and other water conditions which caused the Plaintiff to be thrown into the air, repeatedly, and crash to the deck of the boat.  The high speed boating activity was more indicative of an "extreme" or "difficult" excursion – not "moderate," as classified by Carnival. As a result, Plaintiff suffered severe injuries.

### Carnival's Notice of the Dangerous Excursion and/or Incompetent Providers

31. The subject excursion was not competently operated by properly trained and/or supervised persons, and/or it was unreasonably hazardous for reasons that include, but are not limited to, (1) the inadequate instructions and/or safety guidelines; (2) the inadequate supervision and/or assistance; and/or (3) the high speed manner in which the boat was operated over wakes, waves, and other water conditions which caused the Plaintiff to be thrown into the air,

repeatedly, and crash to the deck of the boat.  The incompetence and/or hazardous conditions of the excursion should have been discovered by Carnival before the incident if Carnival had conducted an adequate inspection of the boat, excursion location, and operators of the subject excursion to ensure it was reasonably safe before repeatedly recommending the excursion to its passengers, including Plaintiff, to the exclusion of other excursions not offered by Carnival.

32. In addition, before Plaintiff's incident, Carnival was or should have been on notice that the subject excursion was dangerous and/or not suitable for passengers due to other cruise ship passengers being injured on high speed boat excursions and/or other excursions operated by the Excursion Entities.

33. Further, before Plaintiff's incident, Carnival was or should have been on notice that the excursion was not reasonably safe for passengers.  This notice was or should have been acquired through Carnival's initial approval process and/or its yearly inspections of the subject excursion.

34. Specifically, before offering excursions to passengers, the excursions and/or the excursion operators are subject to Carnival's approval pursuant to policies and procedures promulgated by Carnival.  This is a duty undertaken by Carnival, in part, so that it may make the aforementioned representations concerning the subject excursion to its passengers in an effort to generate a profit for Carnival.   Accordingly, Carnival is required to execute this duty with reasonable care under the circumstances.  During the excursion approval process, Carnival is supposed to verify whether the operator is qualified.  The excursion operators also provide Carnival details pertaining to the excursion, including, but not limited to, the location, a description, restrictions, and/or participation levels for the excursion.  Part of the approval process also entails Carnival's representatives inspecting the excursion being proposed, including the location, trails, equipment, and operations.   Accordingly, taking the subject

excursion did or should have revealed that the subject excursion was dangerous and/or not suitable for passengers due to (1) the inadequate instructions and/or safety guidelines; (2) the inadequate supervision and/or assistance; (3) the rough, uneven and/or steep terrain; and/or (4) the difficult-to-maneuver ATV(s).

35. Moreover, once an excursion is approved and accepted by Carnival, Carnival sends excursion operators standards, policies, and/or procedures that the operators must adhere to while Carnival is offering their excursions to its passengers.  Additionally, the excursion operators are subject to yearly inspections and/or approval by Carnival, wherein Carnival is supposed to conduct site inspections of the excursion as well as the location, trails, equipment, and operations of the excursion.  The yearly inspections and/or approval process also requires excursion operators to submit yearly "bids" and/or reports to Carnival, wherein the operators disclose the details of incidents that occurred during the excursion involving cruise line passengers (among other information).  Thus, before Plaintiff's incident, Carnival was or should have been on notice that cruise ship passengers were injured participating in these types of excursions.  Further, Carnival's yearly inspections and/or approval process, including taking the subject excursion, did or should have revealed that the subject excursion was dangerous and/or not suitable for passengers due to (1) the inadequate instructions and/or safety guidelines; (2) the inadequate supervision and/or assistance; and/or (3) the high speed manner in which the boat was operated over wakes, waves, and other water conditions which caused passengers to be thrown into the air, repeatedly, and crash to the deck of the boat.

### FACTS CONCERNING THE RELATIONSHIP/ARRANGEMENT BETWEEN CARNIVAL AND THE EXCURSION ENTITIES

36. At all times material hereto, the Excursion Entities were the agents and/or apparent agents of Carnival by virtue of the following, such that Carnival is estopped from denying that the Excursion Entities were the agents and/or apparent agents of Carnival:

    a. Carnival made all arrangements for the subject excursion without disclosing to Plaintiff that the subject excursion was being run by another entity (and/or entities); and/or

    b. Carnival marketed the subject excursion using its company logo on its website and/or in its brochures and/or on its ship without disclosing to Plaintiff that the subject excursion was being run by another entity (and/or entities); and/or

    c. Carnival maintained an excursion desk on its ship whereby it offered, sold, provided information to, and answered questions of passengers about the subject excursion without disclosing to Plaintiff that the subject excursion was being run by another entity (and/or entities); and/or

    d. Carnival recommended its passengers to not engage in excursions, tours and/or activities that are not sold through Carnival; and/or

    e. Until the point that Plaintiff actually participated in the subject excursion, the Plaintiff's exclusive contacts concerning the subject excursion was with Carnival and/or Carnival's onboard excursion desk; and/or

    f. The fee for the subject excursion was charged to the Plaintiff, and collected from the Plaintiff, exclusively by Carnival; and/or

    g. Plaintiff received the receipt for the purchase of the subject excursion exclusively from Carnival.

37. At all times material hereto, Plaintiff relied on the above, to Plaintiff's detriment, so as to believe that the Excursion Entities were the employee(s) and/or agent(s) of Carnival, in

choosing the subject excursion.  At no time did Carnival represent to Plaintiff in particular, or the ship's passengers in general, in a meaningful way that the Excursion Entities were not agent(s) and/or employee(s) of Carnival.

38. At all times material hereto, Carnival was the owner or co-owner of the subject excursion.  At all times material hereto, Carnival was responsible for, and liable for, the actions of the Excursion Entities with respect to the subject excursion.

39. In the alternative, at all times material hereto, a partnership and/or joint venture existed between the Excursion Entities by virtue of the following, whereby Carnival and the Excursion Entities are jointly and severally responsible for the negligence of each other as partners of the partnership and/or joint venture:

    a.  Carnival and the Excursion Entities entered into an agreement whereby: Carnival made all arrangements for the Plaintiff, on behalf of the partnership with the Excursion Entities, for the subject excursion being run by the Excursion Entities; and/or

    b.  Carnival marketed on Carnival's website and/or in its brochures and/or on its ship, on behalf of the partnership with the Excursion Entities, the subject excursion being run by the Excursion Entities; and/or

    c.  Carnival maintained an excursion desk on its ship where it offered, sold, provided information to, and answered questions of passengers, on behalf of the partnership with the Excursion Entities, about the subject excursion being run by the Excursion Entities; and/or

    d.  The Excursion Entities provided the equipment to be used in the subject excursion; and/or

e.  Carnival determined the amount of money charged for the subject excursion being run by the Excursion Entities; and/or

f.  Carnival collected the amount of money charged for the subject excursion being run by the Excursion Entities; and/or

g.  Carnival shared profits with the Excursion Entities for the subject excursion by retaining a portion of the ticket sales for the subject excursion after the tickets were sold, and paying the Excursion Entities the remaining portion of the ticket sales for the subject excursion; and/or

h.  Carnival shared losses with the Excursion Entities for the subject excursion, including, for instance, when Carnival issued a refund to passengers for the Excursion Entities' excursion(s), including, but not limited to, the subject excursion.

40. At all times material hereto, Carnival was a partner in the subject excursion.

41. At all times material hereto, Carnival operated and/or supervised the subject excursion.

42. At all times material hereto, the Excursion Entities owned and operated the subject excursion.  The Excursion Entities were involved in providing the subject excursion to the Plaintiff.  At all times material hereto, the Excursion Entities were the agent(s), apparent agent(s), joint venturer(s), servant(s), and/or employee(s) of Carnival and at all times acted within the course and scope of their agency, apparent agency, joint venture, service and/or employment.

## COUNT I – MISLEADING ADVERTISING IN VIOLATION OF
## FLORIDA STATUTE § 817.41 AGAINST DEFENDANTS

The Plaintiff re-alleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through forty-two (42) as though alleged originally herein.

43. At all times material hereto, Carnival's promotional material, brochures and/or website contained misrepresentations of material facts, including:

 a. Misrepresenting the actual activity level and/or activities involved in the subject excursion; and/or

 b. Misrepresenting that the excursion would allow you "glide atop of the turquoise water" and "you can take photos from the vessel while passing this famous Island"; and/or

 c. Mispresenting shore excursions, including the subject excursion, as being Carnival's excursions through the use of proprietary language; and/or

 d. Misrepresenting the subject excursion by posting a photo of passengers relaxing on a slow moving boat on calm waters; and/or

 e. Misrepresenting that the excursion providers are safe, reliable and/or reputable, when in actuality, passengers' comments, complaints or information concerning safety concerns and/or prior incidents are censored, altered and/or deleted on publicly available website(s) operated and/or controlled by Carnival; and/or

 f. Representing that shore excursion providers are insured, when such insurance may not cover claims outside of the providers' area of operation and/or may contain other limitations, such as the amount and types of claims covered; and/or

 g. Representing and/or implying that excursion providers would be subject to personal jurisdiction in the United States and/or subject to United States and/or Florida law by contractually requiring all Carnival passengers (including the Plaintiff) to file suit in a specific jurisdiction in the United States for all claims

arising from the subject cruise (including incidents that occur while participating in shore excursions) and/or advertising that its excursion providers are insured.

44. Pursuant to Florida Statute § 817.41(4), Carnival as well as the Excursion Entities are responsible for the foregoing false and/or misleading advertisements because Defendants were named in and/or obtained the benefits of the statements and/or advertisements.

45. At all times material hereto, the foregoing statements Carnival made and/or disseminated were known, or through the exercise of reasonable care or investigation could or might have been ascertained, to be false and/or misleading.  This knowledge was or should have been acquired through: (a) Carnival's initial approval process of the Excursion Entities and/or the excursion, including, but not limited to, having Carnival's representative(s) take the excursion;   (b) Carnival's yearly inspections of the Excursion Entities and/or the excursion, including, but not limited to, conducting site inspections; and/or (c) prior incidents involving Carnival passengers injured on high speed boat excursions, the Excursion Entities' excursions, and/or other incidents reported within the cruise industry.

46. At all times material hereto, the statements were so made or disseminated with the intent or purpose, either directly or indirectly, of inducing passengers (including Plaintiff) to rely on the statements and act by purchasing tickets for shore excursions (including the subject excursion).

47. At all times material hereto, the Plaintiff justifiably relied on the representations made by Carnival when Plaintiff purchased tickets for the subject excursion and participated in the subject excursion.

48. As a result thereof, the Plaintiff was injured about Plaintiff's body and extremity, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, post-traumatic stress disorder and other mental and/or nervous disorders, aggravation of any

previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiff's injuries, suffered physical handicap, lost earnings and lost earning capacity, both past and future.  The injuries are permanent or continuing in nature and Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff lost the benefit of Plaintiff's vacation, cruise, and transportation costs.

**WHEREFORE**, the Plaintiff demands judgment for all damages recoverable under the law and demand trial by jury.

### COUNT II – NEGLIGENT MISREPRESENTATION AGAINST CARNIVAL

The Plaintiff re-alleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through forty-two (42) as though alleged originally herein.

49. At all times material hereto, Carnival's promotional material, brochures and/or website contained misrepresentations of material facts, including:

a.  Misrepresenting the actual activity level and/or activities involved in the subject excursion; and/or

b.  Misrepresenting that the excursion would allow you "glide atop of the turquoise water" and "you can take photos from the vessel while passing this famous Island"; and/or

c.  Mispresenting shore excursions, including the subject excursion, as being Carnival's excursions through the use of proprietary language; and/or

d.  Misrepresenting the subject excursion by posting a photo of passengers relaxing on a slow moving boat on calm waters; and/or

e.  Misrepresenting that the excursion providers are safe, reliable and/or reputable, when in actuality, passengers' comments, complaints or information concerning safety concerns and/or prior incidents are censored, altered and/or deleted on publicly available website(s) operated and/or controlled by Carnival; and/or

f.  Representing that shore excursion providers are insured, when such insurance may not cover claims outside of the providers' area of operation and/or may contain other limitations, such as the amount and types of claims covered; and/or

g.  Representing and/or implying that excursion providers would be subject to personal jurisdiction in the United States and/or subject to United States and/or Florida law by contractually requiring all Carnival passengers (including the Plaintiff) to file suit in a specific jurisdiction in the United States for all claims arising from the subject cruise (including incidents that occur while participating in shore excursions) and/or advertising that its excursion providers are insured.

50. At all times material hereto, the foregoing statements Carnival made and/or disseminated were known, or through the exercise of reasonable care or investigation could or might have been ascertained, to be false and/or misleading.  This knowledge was or should have been acquired through: (a) Carnival's initial approval process of the Excursion Entities and/or the excursion, including, but not limited to, having Carnival's representative(s) take the excursion;   (b) Carnival's yearly inspections of the Excursion Entities and/or the excursion, including, but not limited to, conducting site inspections; and/or (c) prior incidents involving Carnival passengers injured on high speed boat excursions, the Excursion Entities' excursions, and/or other incidents reported within the cruise industry.

51. At all times material hereto, the statements were so made or disseminated with the intent or purpose, either directly or indirectly, of inducing passengers (including Plaintiff) to rely

on the statements and act by purchasing tickets for shore excursions (including the subject excursion).

52. At all times material hereto, the Plaintiff justifiably relied on the representations made by Carnival when Plaintiff purchased tickets for the subject excursion and participated in the subject excursion.

53. As a result thereof, the Plaintiff was injured about Plaintiff's body and extremity, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, post-traumatic stress disorder and other mental and/or nervous disorders, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiff's injuries, suffered physical handicap, lost earnings and lost earning capacity, both past and future.  The injuries are permanent or continuing in nature and Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff lost the benefit of Plaintiff's vacation, cruise, and transportation costs.

**WHEREFORE**, the Plaintiff demands judgment for all damages recoverable under the law and demand trial by jury.

## COUNT III – NEGLIGENCE AGAINST CARNIVAL

The Plaintiff re-alleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through forty-two (42) as though alleged originally herein.

54. At all times material hereto, it was the duty of Carnival to provide Plaintiff with reasonable or ordinary care under the circumstances.

55. On or about December 9, 2017, Carnival and/or its agents, servants, joint venturers and/or employees breached its duty to provide Plaintiff with reasonable or ordinary care under the circumstances, based on the following acts and/or omissions:

a. Promoting the subject excursion as "hand selected" by Carnival, thereby implying that the Excursion Entities, operations and/or equipment (including the high speed boat) were reasonably safe under the circumstances, when in fact they were not; and/or

b. Censoring, altering and/or deleting comments on publicly available website(s) operated and/or controlled by Carnival so as to censor, alter and/or delete complaints or information concerning safety concerns and prior incidents similar to the subject incident, thereby implying that the Excursion Entities, operations and/or equipment (including the high speed boat) were reasonably safe under the circumstances, when in fact they were not; and/or

c. Failure to provide a safe excursion; and/or

d. Failure to adequately inspect and/or monitor excursion providers so as to ensure that the subject excursion was reasonably safe for passengers; and/or

e. Failure to adequately inspect and/or monitor the subject excursion so as to ensure that the high speed boat was not operated over wakes, waves, and other water conditions which caused passengers to be thrown into the air, repeatedly, and crash to the deck of the boat; and/or

f. Failure to adequately inspect and/or monitor the subject excursion so as to ensure that passengers could adequately secure themselves during the high speed operation of the boat so that they would not be thrown into the air, repeatedly, and crash to the deck of the boat; and/or

g. Failure to adequately inspect and/or monitor the subject excursion so as to ensure that the instruction and/or warnings during the subject excursion was performed /given in such a manner as was reasonably safe for passengers; and/or

h.  Failure to promulgate and/or enforce adequate standards, policies, and/or procedures for the Excursion Entities to require that the boat not be operated at high speeds over wakes, waves, and other water conditions which caused passengers to be thrown into the air, repeatedly, and crash to the deck of the boat; and/or

i.  Failure to promulgate and/or enforce adequate policies and procedures to ensure that passengers were given adequate instruction and warning to enable them to adequately secure themselves during the high speed operation of the boat so that they would not be thrown into the air, repeatedly, and crash to the deck of the boat; and/or

j.  Failure to adequately inspect and/or monitor the policies and procedures of the Excursion Entities to ensure that the high speed vessel and/or waterway and/or instruction and/or leading during the subject excursion was reasonably safe and/or performed in such a manner as was reasonably safe for cruise ship passengers; and/or

k.  Failure to adequately warn and/or communicate to passengers (including the Plaintiff) of the dangers associated with participating in the subject excursion; and/or

l.  Failure to adequately warn and/or communicate to passengers (including the Plaintiff) that Carnival does not inspect and/or monitor the Excursion Entities, the subject excursion and/or the high speed vessel and/or waterway used for the subject excursion, despite the subject excursion being promoted as "hand selected" by Carnival; and/or

m. Failure to adequately warn and/or communicate to passengers (including the Plaintiff) that Carnival does not verify that the subject excursion and/or the high speed boat used for the subject excursion is/are reasonably safe and/or inspected, despite the subject excursion being promoted as "hand selected" by Carnival; and/or

n. Failure to adequately warn and/or communicate to passengers (including the Plaintiff) that the Excursion Entities are not adhering to highest safety standards in the industry, as evident by the hazard and/or incompetence involved with the subject excursion; and/or

o. Failure to regularly and/or adequately identify the highest safety standards in the industry for the activities offered in the subject excursion, and verify that the Excursion Entities are adhering to such standards; and/or

p. Failure to adequately warn and/or communicate to passengers (including the Plaintiff) that the Excursion Entities are not subject to jurisdiction in the United States, especially when Carnival contractually requires its passengers (including the Plaintiff) to file suit in a specific jurisdiction in the United States for all claims arising from the subject cruise (including incidents that occur while participating in shore excursions); and/or

q. Failure to adequately warn and/or communicate to passengers (including the Plaintiff) that the Excursion Entities carry independent insurance from the cruise line that has lower limits and more limited coverage than Carnival's insurance; and/or

r. Failure to adequately warn and/or communicate to passengers (including the Plaintiff) the limits of the Excursion Entities' insurance; and/or

LIPCON, MARGULIES, ALSINA & WINKLEMAN, P.A.

s.  Failure to verify insurance; and/or

t.  Failure to regularly and/or adequately review the safety record of the Excursion Entities before recommending the subject excursion to passengers and the Plaintiff; and/or

u.  Failure to ensure that properly trained and supervised persons operated the subject excursion and/or vessel; and/or

v.  Having a shore excursion that was not competently operated.

56. All or some of the above acts and/or omissions by Carnival and/or its agents, servants, and/or employees, caused and/or contributed to the Plaintiff being severely injured while participating in the subject excursion.

57. At all times material hereto, Carnival knew of the foregoing conditions causing the subject incident and did not correct them, or the conditions existed for a sufficient length of time so that Carnival, in the exercise of reasonable care under the circumstances, should have learned of them and corrected them.  This knowledge was or should have been acquired through: (a) Carnival's initial approval process of the Excursion Entities and/or the excursion, including, but not limited to, having Carnival's representative(s) take the excursion; (b) Carnival's yearly inspections of the Excursion Entities and/or the excursion, including, but not limited to, conducting site inspections; and/or (c) prior incidents involving Carnival passengers injured on high speed boat excursions, the Excursion Entities' excursions, and/or other incidents reported within the cruise industry.

58. As a result of the negligence of Carnival, the Plaintiff was injured about Plaintiff's body and extremity, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, post-traumatic stress disorder and other mental and/or nervous disorders, aggravation of any previously existing conditions therefrom, incurred medical expenses in the

Lipcon, Margulies, Alsina & Winkleman, P.A.

care and treatment of Plaintiff's injuries, suffered physical handicap, lost earnings and lost earning capacity, both past and future. The injuries are permanent or continuing in nature and Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff lost the benefit of Plaintiff's vacation, cruise, and transportation costs.

**WHEREFORE**, the Plaintiff demands judgment for all damages recoverable under the law and demand trial by jury.

## COUNT IV - NEGLIGENCE AGAINST THE EXCURSION ENTITIES

The Plaintiff re-alleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through forty-two (42) as though alleged originally herein.

59. At all times material hereto, the Excursion Entities owned and/or operated the subject excursion.

60. At all times material hereto, it was the duty of the Excursion Entities to provide Plaintiff with reasonable care under the circumstances.

61. On or about December 9, 2017, the Excursion Entities and/or their agents, servants, and/or employees breached their duty to provide Plaintiff with reasonable care under the circumstances, based on the following acts and/or omissions:

    a.  Failure to provide a safe excursion; and/or

    b.  Failure to adequately inspect and/or monitor excursion providers so as to ensure that the subject excursion was reasonably safe for passengers; and/or

    c.  Failure to adequately inspect and/or monitor the subject excursion so as to ensure that the high speed boat was not operated over wakes, waves, and other water conditions which caused passengers to be thrown into the air, repeatedly, and crash to the deck of the boat; and/or

d.  Failure to adequately inspect and/or monitor the subject excursion so as to ensure that the high speed boat was not operated over wakes, waves, and other water conditions which caused passengers to be thrown into the air, repeatedly, and crash to the deck of the boat; and/or

e.  Failure to adequately inspect and/or monitor the subject excursion so as to ensure that the instruction and/or leading during the subject excursion was performed in such a manner as was reasonably safe for passengers; and/or

f.  Failure to promulgate and/or enforce adequate standards, policies, and/or procedures for the Excursion Entities to require that the boat not be operated at high speeds over wakes, waves, and other water conditions which caused passengers to be thrown into the air, repeatedly, and crash to the deck of the boat; and/or

g.  Failure to promulgate and/or enforce adequate policies and procedures to ensure that passengers were given adequate instruction and warning to enable them to adequately secure themselves during the high speed operation of the boat so that they would not be thrown into the air, repeatedly, and crash to the deck of the boat; and/or

h.  Failure to adequately inspect and/or monitor the policies and procedures of the Excursion Entities to ensure that the high speed vessel and/or waterway and/or instruction and/or leading during the subject excursion was reasonably safe and/or performed in such a manner as was reasonably safe for cruise ship passengers; and/or

i.  Failure to adequately warn and/or communicate to passengers (including the Plaintiff) of the dangers associated with participating in the subject excursion; and/or

j.  Failure to adequately warn and/or communicate to passengers (including the Plaintiff) that Carnival does not inspect and/or monitor the Excursion Entities, the subject excursion and/or the high speed boat and/or waterway used for the subject excursion, despite the subject excursion being promoted as "hand selected" by Carnival; and/or

k.  Failure to adequately warn and/or communicate to passengers (including the Plaintiff) that Carnival does not verify that the subject excursion and/or the high speed boat used for the subject excursion is/are reasonably safe and/or inspected, despite the subject excursion being promoted as "hand selected" by Carnival; and/or

l.  Failure to adequately warn and/or communicate to passengers (including the Plaintiff) that the Excursion Entities are not adhering to highest safety standards in the industry, as evident by the hazard and/or incompetence involved with the subject excursion; and/or

m.  Failure to regularly and/or adequately identify the highest safety standards in the industry for the activities offered in the subject excursion, and verify that the Excursion Entities are adhering to such standards; and/or

n.  Failure to adequately warn and/or communicate to passengers (including the Plaintiff) that the Excursion Entities are not subject to jurisdiction in the United States, especially when Carnival contractually requires its passengers (including the Plaintiff) to file suit in a specific jurisdiction in the United States for all claims

arising from the subject cruise (including incidents that occur while participating in shore excursions); and/or

    o.   Failure to adequately warn and/or communicate to passengers (including the Plaintiff) that the Excursion Entities carry independent insurance from the cruise line that has lower limits and more limited coverage than Carnival's insurance; and/or

    p.   Failure to adequately warn and/or communicate to passengers (including the Plaintiff) the limits of the Excursion Entities' insurance; and/or

    q.   Failure to verify insurance; and/or

    r.   Failure to regularly and/or adequately review the safety record of the Excursion Entities before recommending the subject excursion to passengers and the Plaintiff; and/or

    s.   Failure to ensure that properly trained and supervised persons operated the subject excursion and/or vessel; and/or

    t.   Having a shore excursion that was not competently operated.

62. All or some of the above acts and/or omissions by the Excursion Entities and/or their agents, servants, and/or employees, caused and/or contributed to the Plaintiff being severely injured while participating in the subject excursion.

63. At all times material hereto, the Excursion Entities created and/or knew of the foregoing conditions causing the subject incident and did not correct them, or the conditions existed for a sufficient length of time so that the Excursion Entities, in the exercise of reasonable care under the circumstances, should have learned of them and corrected them.  This knowledge was or should have been acquired through: (a) the initial approval process of the Excursion Entities and/or the excursion, including, but not limited to, having representative(s) take the

subject excursion; (b) the yearly inspections of the Excursion Entities and/or the excursion, including, but not limited to, conducting site inspections; and/or (c) prior incidents involving passengers injured on the Excursion Entities' excursions that have occurred during Carnival cruises and/or that have been reported within the industry.

64. As a result of the negligence of the Excursion Entities, the Plaintiff was injured about Plaintiff's body and extremity, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, post-traumatic stress disorder and other mental and/or nervous disorders, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiff's injuries, suffered physical handicap, lost earnings and lost earning capacity, both past and future.  The injuries are permanent or continuing in nature and Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff lost the benefit of Plaintiff's vacation, cruise, and transportation costs.

**WHEREFORE**, the Plaintiff demands judgment for all damages recoverable under the law and demand trial by jury.

## COUNT V – NEGLIGENCE AGAINST DEFENDANTS
## BASED ON APPARENT AGENCY OR AGENCY BY ESTOPPEL

The Plaintiff re-alleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through forty-two (42) as though alleged originally herein.

65. At all times material hereto, the Excursion Entities were the apparent agent(s) of Carnival.

66. At all times material hereto, Carnival is estopped to deny that the Excursion Entities were their agent(s) or employee(s).

67. At all times material hereto, Carnival made manifestations which caused the Plaintiff to believe that the Excursion Entities had authority to act for the benefit of Carnival. These manifestations included:

a.  Carnival allowed its name to be utilized in connection with the advertising of the Excursion Entities; and/or

b.  Carnival made all arrangements for the subject excursion without effectively disclosing to the Plaintiff that the subject excursion was being run by another entity (and/or entities); and/or

c.  Carnival marketed the subject excursion using its company logo on its website and/or in its brochures and/or on its ship without effectively disclosing to the Plaintiff that the subject excursion was being run by another entity (and/or entities); and/or

d.  Carnival maintained an excursion desk on its ship whereby it offered, sold, provided information to, and answered questions of passengers about the subject excursion without effectively disclosing to the Plaintiff that the subject excursion was being run by another entity (and/or entities); and/or

e.  Until the point that Plaintiff actually participated in the subject excursion, the Plaintiff's exclusive contacts concerning the subject excursion was with Carnival; and/or

f.  Carnival recommended to Plaintiff to not engage in excursions, tours or activities that are not sold through Carnival as Carnival has no familiarity with other tours or their operations; and/or

g.  The fee for the excursion was charged to the Plaintiff, and collected from the Plaintiff, exclusively by Carnival; and/or

h.  Plaintiff received the receipt for the purchase of the subject excursion exclusively from Carnival.

68. Plaintiff reasonably relied on the above, to her detriment, so as to believe that the Excursion Entities were the employee(s) and/or agent(s) of Carnival in choosing the subject excursion.

69. It was reasonable to believe that the Excursion Entities were Carnival's employee(s) and/or agent(s) because the Plaintiff booked, paid for and made all necessary arrangements for the subject excursion with Carnival. Carnival's actions caused Plaintiff to believe that the Excursion Entities had authority to act on Carnival's behalf. At no time did the Excursion Entities represent to the ship's passengers or the Plaintiff in particular in a meaningful way that the Excursion Entities were not agents or employees of Carnival.

70. Plaintiff's reasonable reliance was detrimental because Plaintiff would not have booked, paid for and/or participated in the subject excursion or incur any injuries had the Plaintiff known that the subject excursion was not operated by Carnival.

71. The foregoing acts of negligence of Carnival and/or the Excursion Entities were a direct and proximate cause of the Plaintiff's injuries and damages.

72. As a result of the negligence of the Defendants, the Plaintiff was injured about Plaintiff's body and extremity, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, post-traumatic stress disorder and other mental and/or nervous disorders, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiff's injuries, suffered physical handicap, lost earnings and lost earning capacity, both past and future.  The injuries are permanent or continuing in nature and Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff lost the benefit of Plaintiff's vacation, cruise, and transportation costs.

LIPCON, MARGULIES, ALSINA & WINKLEMAN, P.A.

**WHEREFORE**, the Plaintiff demands judgment for all damages recoverable under the law and demand trial by jury.

### COUNT VI – NEGLIGENCE AGAINST DEFENDANTS BASED ON JOINT VENTURE BETWEEN CARNIVAL AND THE EXCURSION ENTITIES

The Plaintiff re-alleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through forty-two (42) as though alleged originally herein.

73. At all times material hereto, Carnival and the Excursion Entities engaged in a joint venture to provide excursions to passengers aboard Carnival's ship(s).

74. At all times material hereto, Carnival and the Excursion Entities entered into an agreement where Carnival would sell the subject excursion to its passengers and the Excursion Entities would operate the subject excursion.

75. As its part of the joint venture, Carnival arranged for, sponsored, recommended, marketed, operated, marketed, sold and/or collected money for the subject excursion, and the money was then shared between Carnival and the Excursion Entities.  As its part of the joint venture, the Excursion Entities provided labor and/or operated the subject excursion.

76. Carnival, on behalf of the joint venture, charged a fee to passengers who utilized the excursions.  The fee paid by the passengers, including the Plaintiff, was split between Carnival and the Excursion Entities, such that Carnival and the Excursion Entities shared a profit of the money made from the shore excursion.

77. At all times material hereto, Carnival and the Excursion Entities had joint and/or shared control over aspects of the joint venture.  The Excursion Entities had control over the day-

to-day workings of the excursions. Carnival also had control over the day-to-day workings of the excursions in that they required the Excursion Entities to exercise reasonable care in the operation of the subject excursion. Carnival had control over the arrangements, marketing and sales of the excursion.

78. At all times material hereto, Carnival and the Excursion Entities shared a common purpose: to operate the subject excursion for a profit.

79. At all times material hereto, Carnival and the Excursion Entities had a joint proprietary and/or ownership interest in the subject excursion. Carnival had an interest in arranging, sponsoring, recommending, advertising, operating, and selling the subject excursion as well as collecting money for such excursion, and the Excursion Entities had a proprietary interest in the time and labor expended in operating the subject excursion.

80. At all times material hereto, Carnival and the Excursion Entities shared and/or had the right to share in the profits of the subject excursion, as Carnival retained a portion of the ticket sales for the subject excursion after the tickets were sold, and Carnival paid the Excursion Entities the remaining portion of the ticket sales for the subject excursion.

81. At all times material hereto, Carnival and the Excursion Entities shared and/or had a duty to share any losses that may have been sustained with the subject excursion, including, for instance, when Carnival issued a refund to passengers for the Excursion Entities' excursion(s), including, but not limited to, the subject excursion.

82. Carnival and the Excursion Entities are jointly and severally responsible for each other's negligence as partners of the partnership and/or joint venture.

83. At all times material hereto, Carnival and the Excursion Entities therefore:

    a.  Had an intention to create a joint venture;

    b.  Had a joint proprietary interest in the subject matter of the venture;

    c.  Had mutual control and/or joint control over the subject matter of the venture with respect to the provision of excursions to passengers aboard the ship;

    d.  Had a right to share in the profits of the joint venture; and

    e.  Would share losses which may have been sustained.

84. As joint venturers, Carnival and the Excursion Entities are liable for each other's negligence.  As a result, Carnival is liable for the negligent conduct of the Excursion Entities.

85. As a result of the negligence of Defendants, the Plaintiff was injured about Plaintiff's body and extremity, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, post-traumatic stress disorder and other mental and/or nervous disorders, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiff's injuries, suffered physical handicap, lost earnings and lost earning capacity, both past and future.  The injuries are permanent or continuing in nature and Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff lost the benefit of Plaintiff's vacation, cruise, and transportation costs.

**WHEREFORE**, the Plaintiff demands judgment for all damages recoverable under the law and demand trial by jury.

## COUNT VII – THIRD-PARTY BENEFICIARY

The Plaintiff re-alleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through forty-two (42) as though alleged originally herein.

86. Carnival and the Excursion Entities entered into a contract to provide the subject excursion for passengers aboard Carnival's ship(s).

87. Carnival and the Excursion Entities intended that the contract primarily and directly benefit Carnival's passengers, including the Plaintiff.

LIPCON, MARGULIES, ALSINA & WINKLEMAN, P.A.

88. The intent of Carnival and the Excursion Entities for the contract to benefit Carnival passengers, including the Plaintiff, was expressed by Carnival and the Excursion Entities.

89. The intent of Carnival and the Excursion Entities for the contract to benefit Carnival passengers, including the Plaintiff, was demonstrated by the provisions of the contract.  These provisions include, but are not limited to, the following: (a) the purpose of the agreement explicitly stating that it is for the Excursion Entities to provide shore excursions to guests on Carnival's vessels; (b) prohibiting dangerous activities from forming any part of shore excursions; (c) Carnival having the right to charge its passengers the price that Carnival determines in its sole discretion; (d) Carnival having the sole discretion to provide its passengers a full or partial reimbursement of the excursion ticket if a passenger is dissatisfied; (e) Carnival requiring that the Excursion Entities exercise reasonable care for the passengers' safety at all times; (f) Carnival requiring that the Excursion Entities satisfy and continue to satisfy the highest standards of quality in the industry; and/or (g) Carnival requiring that the Excursion Entity maintain insurance for any and all injuries to passengers.

90. This contract was breached by Carnival and/or the Excursion Entities for acts and/or omissions that include, but are not limited to, the following:

    a.  Promoting the subject excursion as "hand selected" by Carnival, thereby implying that the Excursion Entities, operations and/or equipment (including the high speed boat) were reasonably safe under the circumstances, when in fact they were not; and/or

    b.  Censoring, altering and/or deleting comments on publicly available website(s) operated and/or controlled by Carnival so as to censor, alter and/or delete complaints or information concerning safety concerns and prior incidents similar to the subject incident, thereby implying that the Excursion Entities, operations

and/or equipment (including the high speed boat) were reasonably safe under the circumstances, when in fact they were not; and/or

c.   Failure to provide a safe excursion; and/or

d.   Failure to adequately inspect and/or monitor excursion providers so as to ensure that the subject excursion was reasonably safe for passengers; and/or

e.   Failure to adequately inspect and/or monitor the subject excursion so as to ensure that the high speed boat was not operated over wakes, waves, and other water conditions which caused passengers to be thrown into the air, repeatedly, and crash to the deck of the boat; and/or

f.   Failure to adequately inspect and/or monitor the subject excursion so as to ensure that passengers could adequately secure themselves during the high speed operation of the boat so that they would not be thrown into the air, repeatedly, and crash to the deck of the boat; and/or

g.   Failure to adequately inspect and/or monitor the subject excursion so as to ensure that the instruction and/or warnings during the subject excursion was performed /given in such a manner as was reasonably safe for passengers; and/or

h.   Failure to promulgate and/or enforce adequate standards, policies, and/or procedures for the Excursion Entities to require that the boat not be operated at high speeds over wakes, waves, and other water conditions which caused passengers to be thrown into the air, repeatedly, and crash to the deck of the boat; and/or

i.   Failure to promulgate and/or enforce adequate policies and procedures to ensure that passengers were given adequate instruction and warning to enable them to adequately secure themselves during the high speed operation of the boat so that

they would not be thrown into the air, repeatedly, and crash to the deck of the boat; and/or

j.  Failure to adequately inspect and/or monitor the policies and procedures of the Excursion Entities to ensure that the high speed vessel and/or waterway and/or instruction and/or leading during the subject excursion was reasonably safe and/or performed in such a manner as was reasonably safe for cruise ship passengers; and/or

k.  Failure to adequately warn and/or communicate to passengers (including the Plaintiff) of the dangers associated with participating in the subject excursion; and/or

l.  Failure to adequately warn and/or communicate to passengers (including the Plaintiff) that Carnival does not inspect and/or monitor the Excursion Entities, the subject excursion and/or the high speed vessel and/or waterway used for the subject excursion, despite the subject excursion being promoted as "hand selected" by Carnival; and/or

m.  Failure to adequately warn and/or communicate to passengers (including the Plaintiff) that Carnival does not verify that the subject excursion and/or the high speed boat used for the subject excursion is/are reasonably safe and/or inspected, despite the subject excursion being promoted as "hand selected" by Carnival; and/or

n.  Failure to adequately warn and/or communicate to passengers (including the Plaintiff) that the Excursion Entities are not adhering to highest safety standards in the industry, as evident by the hazard and/or incompetence involved with the subject excursion; and/or

LIPCON, MARGULIES, ALSINA & WINKLEMAN, P.A.

o.  Failure to regularly and/or adequately identify the highest safety standards in the industry for the activities offered in the subject excursion, and verify that the Excursion Entities are adhering to such standards; and/or

p.  Failure to adequately warn and/or communicate to passengers (including the Plaintiff) that the Excursion Entities are not subject to jurisdiction in the United States, especially when Carnival contractually requires its passengers (including the Plaintiff) to file suit in a specific jurisdiction in the United States for all claims arising from the subject cruise (including incidents that occur while participating in shore excursions); and/or

q.  Failure to adequately warn and/or communicate to passengers (including the Plaintiff) that the Excursion Entities carry independent insurance from the cruise line that has lower limits and more limited coverage than Carnival's insurance; and/or

r.  Failure to adequately warn and/or communicate to passengers (including the Plaintiff) the limits of the Excursion Entities' insurance; and/or

s.  Failure to verify insurance; and/or

t.  Failure to regularly and/or adequately review the safety record of the Excursion Entities before recommending the subject excursion to passengers and the Plaintiff; and/or

u.  Failure to ensure that properly trained and supervised persons operated the subject excursion and/or vessel; and/or

v.  Having a shore excursion that was not competently operated.

91. All or some of the above acts and/or omissions by Defendants and/or their agents, servants, and/or employees, caused and/or contributed to the Plaintiff being severely injured while participating in the subject excursion.

92. As a result of the breach, the Plaintiff was injured about Plaintiff's body and extremity, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, post-traumatic stress disorder and other mental and/or nervous disorders, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiff's injuries, suffered physical handicap, lost earnings and lost earning capacity, both past and future.  The injuries are permanent or continuing in nature and Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff lost the benefit of Plaintiff's vacation, cruise, and transportation costs.

**WHEREFORE**, the Plaintiff demands judgment for all damages recoverable under the law and demand trial by jury.

### COUNT VIII – BREACH OF FIDUCIARY DUTY AGAINST CARNIVAL

The Plaintiff re-alleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through forty-two (42) as though alleged originally herein.

93. At all times material hereto, Plaintiff was a resident of New York, and Carnival was in the business of offering shore excursions to thousands of passengers daily from which it earned tens of millions of dollars a year (or more).  Specifically, Carnival (a) conducted an initial approval and/or yearly inspection process for all excursion providers; (b) arranged for the services called for by the excursion providers; (c) collected a fee directly from passengers; and (d) earned a profit from the ticketing or sale of such services.  As a result, Carnival was in a much stronger position to identify the potential dangers and/or inequities that passengers (like

Plaintiff) will encounter when participating in excursions and/or when involved in incident(s) and/or dispute(s) with excursion providers.

94. Considering their respective positions, Plaintiff bestowed complete trust and confidence upon Carnival to (a) select safe, reliable and/or reputable excursion providers for passengers (like Plaintiff); (b) offer reasonably safe excursions for passengers (like Plaintiff); (c) accurately advise passengers (like Plaintiff) concerning the excursion providers and/or the subject excursion; and/or (d) make arrangements with the excursion providers that would benefit and/or protect passengers (like Plaintiff).

95. At all times material hereto, Carnival accepted Plaintiff's trust and confidence by representing that Carnival "hand selected the best local providers at every port of call," and recommending that passengers (like Plaintiff) not engage in excursions, tours or activities that were not sold through Carnival.  Carnival also represented to the Plaintiff that it was acting as an agent for the Plaintiff in selecting and arranging shore excursions.

96. At all times material hereto, Carnival therefore had a fiduciary duty to (a) select safe, reliable and/or reputable excursion providers for passengers (like Plaintiff); (b) offer reasonably safe excursions for passengers (like Plaintiff); (c) accurately advise passengers (like Plaintiff) concerning the excursion providers and/or the subject excursion; and/or (d) make arrangements with the excursion providers that would benefit and/or protect passengers (like Plaintiff).

97. At all times material hereto, Carnival breached its fiduciary duty to Plaintiff by the following acts and/or omissions:

      a.  Failing to select and/or adequately verify that the Excursion Entities were safe, reliable and/or reputable, as evident by the incompetence involved with the subject excursion; and/or

b.  Failing to offer a reasonably safe excursion, as evident by the hazard involved with the subject excursion; and/or

c.  Failing to accurately advise Plaintiff concerning the actual activity level and/or activities involved in the subject excursion; and/or

d.  Failure to adequately warn and/or communicate to passengers (including the Plaintiff) that the Excursion Entities are not subject to jurisdiction in the United States and/or the law in the United States or Florida, especially when Carnival contractually requires its passengers (including the Plaintiff) to file suit in a specific jurisdiction in the United States for all claims arising from the subject cruise (including incidents that occur while participating in shore excursions); and/or

e.  Failing to make arrangements with the Excursion Entities that would benefit and/or protect passengers, such as (i) requiring the Excursion Entities to submit to personal jurisdiction in the United States and, specifically, in the same forum that Carnival requires Plaintiff to file lawsuits for all claims arising from the subject cruise; and (ii) requiring the Excursion Entities to agree to the application of specific United States and/or Florida law for all disputes arising from the subject excursion, including passengers' claims against the Excursion Entities.

98. As a result of the breach, the Plaintiff was injured about Plaintiff's body and extremity, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, post-traumatic stress disorder and other mental and/or nervous disorders, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiff's injuries, suffered physical handicap, lost earnings and lost earning capacity, both past and future.  The injuries are permanent or continuing in nature and

Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff lost the benefit of Plaintiff's vacation, cruise, and transportation costs.

      **WHEREFORE**, the Plaintiff demands judgment for all damages recoverable under the law and demand trial by jury.

                        Respectfully submitted,

                        LIPCON, MARGULIES,
                        ALSINA & WINKLEMAN, P.A.
                        *Attorneys for Plaintiff*
                        One Biscayne Tower, Suite 1776
                        2 South Biscayne Boulevard
                        Miami, Florida 33131
                        Telephone No.: (305) 373-3016
                        Facsimile No.: (305) 373-6204

          By:   */s/ Jason R. Margulies*
                        **JASON R. MARGULIES**
                        Florida Bar No. 57916
                        jmargulies@lipcon.com
                        **JACQUELINE GARCELL**
                        Florida Bar No. 104358
                        jgarcell@lipcon.com

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on November 27, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to electronically receive Notices of Electronic Filing.

                        By:   */s/ Jason R. Margulies*
                                  **JASON R. MARGULIES**