UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 18-24933-CIV-ALTONAGA/Goodman

PATRICIA MELLNITZ,

Plaintiff,

v.

CARNIVAL CORPORATION, et al.,

Defendants.

_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS,
CARNIVAL CORPORATION AND SUN BAHAMAS WATER SPORTS d/b/a
BAHAMAS STORAGE AND SHIPPING SUPPLIES COMPANY LTD.'S
JOINT MOTION TO DISMISS PLAINTIFF'S COMPLAINT [D.E. 31]**

The Plaintiff, PATRICIA MELLNITZ, by and through undersigned counsel, responds in opposition to the Joint Motion to Dismiss filed by Defendants, CARNIVAL CORPORATION ("Carnival") and SUN BAHAMAS WATER SPORTS d/b/a BAHAMAS STORAGE AND SHIPPING SUPPLIES COMPANY LTD. ("Sun Bahamas"). [D.E. 31].

**I.    Introduction**

This matter arises out of the injuries sustained by Plaintiff while participating in a snorkeling excursion during a Carnival cruise. [D.E. 1, ¶¶29-30].  The Plaintiff alleges the excursion was not competently operated and it was unreasonably hazardous due to (1) the inadequate instructions and/or safety guidelines; (2) the inadequate supervision and/or assistance; and/or (3) the high speed in which the boat was operated over wakes, waves, and other water conditions, which caused Plaintiff to be thrown into the air, repeatedly, and crash to the deck of the boat. [Id. at ¶31].

Before participating in the excursion, however, Plaintiff obtained all of the information regarding the excursion from Carnival, and she made all of the arrangements for the excursion exclusively with Carnival. [Id. at ¶27].  Unbeknownst to Plaintiff at the time of the cruise, however, the excursion was owned and/or operated by Sun Bahamas. [Id. at ¶29].  Thus, Plaintiff initiated this lawsuit against both Carnival and Sun Bahamas.

Pursuant to this Court's Order [D.E. 11], Defendants filed a combined response to Plaintiff's Complaint [D.E. 31], which is the motion at issue herein.

II.     **Carnival's Motion to Dismiss for Failure to State a Claim**

Carnival moves to dismiss the following causes of action directed against it: misleading advertising (Count I), negligent misrepresentation (Count II), negligence (Count III), negligence based on apparent agency or agency by estoppel (Count V), third-party beneficiary (Count VII), and breach of fiduciary duty (Count VIII). [D.E. 31].

A.     **Standard Applied to Motions to Dismiss for Failure to State a Claim**

To survive a Rule 12(b)(6) motion, a claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). This standard "does not require 'detailed factual allegations,'" but it requires a "plausible claim for relief..." *Iqbal*, 556 U.S. at 679 (citation omitted). To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citation omitted). When considering such a motion to dismiss, the pleadings are construed broadly, and the allegations in the complaint are viewed in the light most favorable to the plaintiff. *See Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1120 (11th Cir. 2006).

B.     **Plaintiff's Complaint is not a shotgun pleading.**

The first argument presented by Carnival is that Plaintiff's Complaint is a "shotgun pleading." [D.E. 31, p. 4]. A shotgun complaint typically involves a plaintiff ***incorporating the allegations of previous counts*** by reference, making it virtually impossible to know which allegations of fact are intended to support which claim(s) for relief. *See Anderson v. Dist. Bd. of Trustees of Cent. Florida Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996); *see also Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290, 133 (11th Cir. 1998). Though the Eleventh Circuit has condemned shotgun pleadings, the Court has also cautioned that dismissal on such grounds should be the last resort. *See Bailey v. Janssen Pharmaceutics, Inc.*, 288 Fed. App'x 597, 603 (11th Cir. 2008) ("When faced with a shotgun complaint, we have encouraged defendants to make motions for more definite statements or courts to demand repleader[ ] and not, as the case were, to dismiss a complaint with prejudice."); *Andersen*, 77 F.3d at 367 & n.5 (stating that defendants are "expected" to move for a more definite statement); *see also Perricone v. Carnival Corp.*, 15-20309-CV, 2016 WL 1161214, at *3 (S.D. Fla. Mar. 24, 2016).

Herein, Plaintiff does not incorporate the allegations of other counts into each cause of action. Rather, Plaintiff incorporates the preliminary allegations in paragraphs 1-42, which detail

the allegations of each count against Defendants.  Furthermore, these preliminary 42 paragraphs are clearly organized under headings and sub-headings.[1]  In a similar case involving the incorporation of preliminary allegations with sub-headings, the Court denied defendant's motion to dismiss, finding the complaint "far from a problematic 'shotgun pleading.'" *Shashi, LLC v. Tsipilates, LLC,* 13-61303-CIV, 2013 WL 12091058, at *7 (S.D. Fla. Nov. 18, 2013); *see also Perricone*, 2016 WL 1161214, at *3 (also holding that a complaint incorporating preliminary allegations was not a shotgun pleading warranting dismissal).

Both *Shashi* and *Perricone* further noted that dismissal with prejudice is not the proper recourse for alleged shotgun pleadings. *See Shashi*, 2013 WL 12091058, at *7 ("even if the Court found each count's reference to the first thirty-six paragraphs to be confusing—which it does not as currently pled… dismissing the Complaint with prejudice, as [defendant] asks this Court to do, would constitute reversible error"); *see also Perricone*, 2016 WL 1161214, at *3 ("even if the Court were to agree with [defendant], dismissal with prejudice is not proper at this stage of the proceedings").  Thus, Carnival's motion to dismiss for being an alleged shotgun pleading fails.

### C.  Misleading Advertising and Negligent Misrepresentation

As stated, Counts I and II of the Complaint assert claims for misleading advertising in violation of Fla. Stat. § 817.41 and negligent misrepresentation, respectively. Carnival argues that Plaintiff failed to state with particularity the circumstances constituting fraud or mistake, and she failed to allege all elements for the claims.

"To comply with Rule 9(b), Plaintiff must allege 'precisely what statements were made ... plus the time and place of each statement and the person responsible for making ... same, plus the content of such statements and the manner in which they misled the Plaintiff.'" *Heller v. Carnival Corp.*, 191 F. Supp. 3d 1352, 1360 (S.D. Fla. 2016) (alterations in original).  The Plaintiff alleges

---

[1] In Plaintiff's Complaint, the headings and sub-headings are as follows: "PRELIMINARY ALLEGATIONS" (¶¶1-8); "The Excursion Entities' activities in Florida satisfy a finding of specific jurisdiction under Florida Statute § 48.193(1)(a)." (¶9); "The Excursion Entities' contract with Carnival meets all requirements to satisfy a finding of specific jurisdiction under Florida Statute § 48.193(1)(a)(9)." (¶10); "The Excursion Entities' continuous and systematic general business contacts with Florida satisfy a finding of general jurisdiction under Florida Statute § 48.193(2)." (¶¶11-13); "The Excursion Entities' activities in Florida satisfy a finding of jurisdiction under Fed. R. Civ. P. 4(k)." (¶14); "FACTS COMMON TO ALL COUNTS" (¶¶15-17); "Promotional Material and Statements Concerning Shore Excursions Generally and the Subject Excursion Specifically" (¶¶18-25); "Subject Incident" (¶¶26-30); "Carnival's Notice of the Dangerous Excursion and/or Incompetent Providers" (¶¶31-35); and "FACTS CONCERNING THE RELATIONSHIP/ARRANGEMENT BETWEEN CARNIVAL AND THE EXCURSION ENTITIES" (¶¶36-42). [D.E. 1].

all such particularities in paragraphs 18-25 and 43-53.  Paragraphs 22-24 provide the specific content of the statements at issue, including Carnival (1) referring to the excursions in proprietary language as if they were Carnival's excursions; (2) describing the subject excursion as "[m]oderate" despite Carnival classifying other excursions with high speed boat rides being classified as "[e]xtreme" or "[d]ifficult"; and (3) stating the excursion providers are "required to carry insurance." [D.E. 1, ¶¶22(a), (e), 24].[2] The Plaintiff further alleges the statements were contained in Carnival's website, as well as Carnival's promotional material (including brochures) which were sent to the Plaintiff and kept at the shore excursion desk on the ship during the cruise. [Id. at ¶¶19, 22, 43, 49]. Therefore, the Complaint contains the time and place of each statement, the specific content of the statements from Carnival, and the manner in which they misled the Plaintiff, which are all of the necessary particularities. *See Heller*, supra.

The Plaintiff also alleges the elements of both claims, which are essentially the same and require plaintiff to allege (1) the representor made a misrepresentation of a material fact; (2) the representor knew or should have known of the falsity of the statement; (3) the representor intended the representation would induce another to rely and act on it; and (4) the plaintiff suffered injury in justifiable reliance on the representation. *See Brown v. Oceania Cruises, Inc.*, 17-22645-CIV, 2018 WL 2446032, at *6 (S.D. Fla. May 31, 2018) ("*Brown I*"); *see also Koens v. Royal Caribbean Cruises, Ltd.*, 774 F. Supp. 2d 1215, 1221 n.7 (S.D. Fla. 2011).

The Complaint alleges that Carnival made representations of material facts, with a detailed description of such misrepresentations. [D.E. 1, ¶¶18-25, 43, 49]. It alleges that Carnival knew or should have known of the falsity based on its (a) initial approval process; (b) yearly inspections; and/or (c) prior incidents. [Id. at ¶¶45, 50]. It alleges that Carnival made or disseminated the statements with the intent or purpose of inducing Plaintiff to rely on the statements and act by purchasing excursion tickets. [Id. at ¶¶46, 51]. And it alleges that Plaintiff justifiably relied on the representations when she bought tickets, participated in the excursion, and suffered the resulting injuries. [Id. at ¶¶47-48, 52-53].

---

[2] The following are additional statements included in the Complaint: "c. Carnival's website stated that Carnival "hand selected the best local providers at every port of call," and Carnival recommended that passengers not engage in excursions, tours or activities that were not sold through Carnival. d. Carnival represented in its promotional material (including its website) that its excursion providers are 'reliable [and] reputable,' that all shore excursions were 'guided,' and that Carnival selects its excursion providers because they have the 'best reputation' in their respective ports...." [D.E. 1, ¶¶22(a)-(e)].

Thus, Plaintiff alleged all elements for both misleading advertising and negligent misrepresentation with sufficient particularity, and Carnival's motion as to these claims should be denied.

### D.  Count III: Negligence against Carnival

Count III of the Complaint asserts a negligence claim against Carnival, which requires a plaintiff to show that (1) the defendant owed the plaintiff a duty; (2) the defendant breached that duty; (3) the breach was the proximate cause of the plaintiff's injury; and (4) the plaintiff suffered damages. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012).[3]

#### 1.  Carnival's notice is unquestionably supported by underlying facts.

Carnival's first point of contention is that the Complaint does not contain sufficient facts concerning notice to trigger Carnival's duty to warn. [D.E. 31, p. 8].

The applicable standard of reasonable care "requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition." *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989). Constructive notice may be established through evidence which shows (1) that the dangerous condition existed for such a length of time that in the exercise of ordinary care, the defendant should have known of the condition, or (2) that the condition occurred with regularity and was therefore foreseeable. *See Kloster Cruise Ltd. v. Grubbs*, 762 So. 2d 552 (Fla. 3d DCA 2000).

Herein, Plaintiff alleges Carnival failed to warn her of the dangers associated with participating in the subject excursion, despite Carnival having knowledge of such dangers. [D.E. 1, ¶57]. These allegations are supported by facts detailing exactly how Carnival did and/or should have acquired knowledge of the dangerous conditions, including through Carnival's initial approval process and/or its yearly inspections, as summarized in paragraphs 33-35:

> … Carnival was or should have been on notice that the excursion was not reasonably safe for passengers. This notice was or should have been acquired through Carnival's initial approval process and/or its yearly inspections of the subject excursion.
>
> Specifically, before offering excursions to passengers, the excursions and/or the excursion operators are subject to Carnival's approval…. During the excursion ***approval process***, … The excursion operators also provide Carnival details pertaining to the excursion, including, but not limited to, the location, a description, restrictions, and/or participation levels for the excursion. Part of the approval process also entails Carnival's representatives inspecting the excursion being proposed, including the location... equipment, and operations….

---

[3] It is undisputed that general maritime law applies in this case. [D.E. 1, ¶6]; [D.E. 31, pp. 2-3].

Moreover, once an excursion is approved and accepted by Carnival,… the excursion operators are subject to ***yearly inspections*** and/or approval by Carnival… The yearly inspections and/or approval process also requires excursion operators to… disclose the details of incidents that occurred during the excursion involving cruise line passengers…. Further, Carnival's yearly inspections and/or approval process, including taking the subject excursion, did or should have revealed that the subject excursion was dangerous and/or not suitable for passengers…

[D.E. 1, ¶¶33-35] (emphasis added).

Consistent with the foregoing, paragraph 57 alleges that Carnival's notice was or should have been acquired through: "(a) the initial approval process of the Excursion Entities and/or the excursion, including, but not limited to, having representative(s) take the subject excursion; (b) the yearly inspections of the Excursion Entities and/or the excursion, including, but not limited to, conducting site inspections; and/or (c) prior incidents involving passengers injured on the Excursion Entities' excursions that have occurred during Carnival cruises and/or that have been reported within the industry." [Id. at ¶57].

As this Honorable Court previously held, the above allegations are more than sufficient to establish notice. *See Heller*, 191 F. Supp. 3d at 1358 ("Plaintiff's allegation Carnival should have become aware of the risk-creating condition during inspections… is sufficient regarding Carnival's actual or constructive notice…").[4]   The above allegations are also more than sufficient to distinguish it from the case, *Polanco v. Carnival Corp.*, 10-21716-CIV, 2010 WL 11575228 (S.D. Fla. Aug. 11, 2010), which Carnival relies on in its motion.

Carnival also challenges Plaintiff's allegations by claiming that "Carnival has no duty to inspect" excursion providers. [D.E. 31, p. 9].  But this argument is irrelevant at this pleading stage. The Complaint alleges that Carnival conducts "yearly inspections," which includes, *inter alia*, having Carnival's representative(s) take the excursion and conduct site inspections. [D.E. 1, ¶¶33, 57].  These allegations are obviously taken as true.  Thus, regardless of the <u>actual</u> duty Carnival claims to have had (or not have), Carnival <u>undertook/assumed</u> the duty to inspect based on

---

[4] As discussed in *Heller*, Carnival's reliance on *Gayou v. Celebrity Cruises, Inc.*, No. 11-23359-Civ., 2012 WL 2049431 (S.D. Fla. June 5, 2012), is misplaced because that case is distinguishable. "[T]he *Gayou* court held the plaintiff had failed to allege "any facts from which it may be inferred that Celebrity either knew or should have known of any dangerous or unsafe condition." *Id.* at *5 (emphasis omitted)." *Heller*, 191 F. Supp. 3d at 1359. By contrast, herein like in *Heller*, Plaintiff alleges that Carnival "knew or should have known, based on inspections when approving the [excursion], of the possible dangers the excursion presented. This simple factual allegation is similar to the allegation found sufficient by the Eleventh Circuit in *Chaparro*— decided after *Gayou*." *Id.*

Plaintiff's allegations, and as such, Carnival was to exercise reasonable care in performing such inspections. *See Gharfeh v. Carnival Corp.*, 309 F. Supp. 3d 1317, 1327 (S.D. Fla. 2018); *Rojas v. Carnival Corp.*, 13-cv-21897, 2015 WL 7736475, at *6 (S.D. Fla. Nov. 30, 2015) (explaining that the court need not resolve the legal question of "whether cruise lines have a duty to secure medical transport for passengers who sustain injuries ashore" because "it is undisputed that Carnival assumed the duty to secure medical transport for Plaintiff") (citing *Stauffer Chem. Co. v. Brunson*, 380 F.2d 174, 182 (5th Cir. 1967) ("When one voluntarily assumes a duty he is bound to perform it with care and if done negligently, he is liable for damage resulting from such negligence.")); *see also Disler v. Royal Caribbean Cruise Ltd.*, 17-23874-CIV, 2018 WL 1916614, at *4 (S.D. Fla. Apr. 23, 2018) (basing the assumption on representations contained in the cruise line's website).

The Complaint's notice allegations go above and beyond the "short and plain statement" required under Rule 8. To that point, courts in this district (including this Honorable Court) consistently acknowledge that, "[a]s a practical matter, a personal injury plaintiff is often unaware of specific facts demonstrating that the defendant knew or should have known of a dangerous condition at the time the lawsuit is filed, before taking discovery. Plaintiffs sometimes obtain evidence of the defendant's knowledge during discovery, such as by obtaining evidence that the defendant was aware of prior injuries occurring under similar circumstances." *Ash v. Royal Caribbean Cruises Ltd.*, 13-20619-CIV, 2014 WL 6682514, at *6 (S.D. Fla. Nov. 25, 2014); *see also Heller*, 191 F. Supp. 3d at 1358 n. 5 (citing same).

In this case, as in *Heller*, "Plaintiff has put forth enough at this juncture to allow her to move forward with discovery on this Count. In the end, it may not be true Carnival knew or should have known about the dangers concerning the [subject excursion]; that question, however, is more appropriate for summary judgment or trial." *Heller*, 191 F. Supp. 3d at 1358 n. 5. Ultimately, Plaintiff "is not required to plead evidence, nor even all the facts upon which her claim is based." *Gentry v. Carnival Corp.*, 11-21580-CIV, 2011 WL 4737062 (S.D. Fla. 2011).

Therefore, Plaintiff sets forth sufficient notice allegations at this juncture.

### 2. Carnival's negligent selection and/or retention is adequately alleged.

Carnival's second argument concerning the negligence claim is that Plaintiff fails to sufficiently allege a claim for negligent selection and/or retention. [D.E. 31, p. 12].

It is "well-established that [cruise lines] may be liable for negligently hiring or retaining a contractor," including shore excursion operators. *Smolnikar*, 787 F. Supp. 2d at 1318. A plaintiff bringing a claim for negligent hiring or retention of an independent contractor must prove that "(1) the contractor was incompetent or unfit to perform the work; (2) the employer knew or reasonably should have known of the particular incompetence or unfitness; and (3) the incompetence or unfitness was a proximate cause of the plaintiff[']s injury." *Id*.

While the Complaint does not contain a separate count for negligent selection and/or retention, Plaintiff nevertheless alleges all elements for such claim. The Complaint alleges the **first element** by stating that Sun Bahamas/the Excursion Entities were incompetent and/or unfit based on: "(1) the inadequate instructions and/or safety guidelines; (2) the inadequate supervision and/or assistance; and/or (3) the high speed manner in which the boat was operated over wakes, waves, and other water conditions which caused the Plaintiff to be thrown into the air, repeatedly, and crash to the deck of the boat." [D.E. 1, ¶31]. Then, within the negligent count, Plaintiff alleges Carnival was negligent by, *inter alia*:

e. Fail[ing] to adequately inspect and/or monitor the subject excursion so as to ensure that the high speed boat was not operated over wakes, waves, and other water conditions which caused passengers to be thrown into the air, repeatedly, and crash to the deck of the boat; and/or

f. Fail[ing] to adequately inspect and/or monitor the subject excursion so as to ensure that passengers could adequately secure themselves during the high speed operation of the boat so that they would not be thrown into the air, repeatedly, and crash to the deck of the boat; and/or

g. Fail[ing] to adequately inspect and/or monitor the subject excursion so as to ensure that the instruction and/or warnings during the subject excursion was performed /given in such a manner as was reasonably safe for passengers; and/or …

j. Fail[ing] to adequately inspect and/or monitor the policies and procedures of the Excursion Entities to ensure that the high speed vessel and/or waterway and/or instruction and/or leading during the subject excursion was reasonably safe and/or performed in such a manner as was reasonably safe for cruise ship passengers; and/or …

u. Fail[ing] to ensure that properly trained and supervised persons operated the subject excursion and/or vessel; and/or

v. Having a shore excursion that was not competently operated.

[Id. at ¶55].  The Complaint goes on to allege that Carnival knew or should have known of the foregoing through: (a) its "initial approval process[,]" including having Carnival representatives take the excursion; (b) its "yearly inspections[,]" including conducting site inspections; and (c) "prior incidents…" [Id. at ¶57.  The above paragraphs thus sufficiently allege the ***second element.***

The Complaint then alleges the ***third element*** by stating that "the above acts and/or omissions[,]" including "[h]aving a shore excursion that was not competently operated" [id. at ¶55(v)], "caused and/or contributed to the Plaintiff being severely injured while participating in the subject excursion." [Id. at ¶56.]

All of these allegations are sufficient to plead a *prima facie* case for negligent selection and/or retention against Carnival.  Furthermore, courts in this district have consistently refused to dismiss individual alleged breaches, stating that even though "certain of the alleged breaches… may not adequately state a negligence claim, the Court will not strike the alleged breaches in line-item fashion" when the plaintiff sufficiently alleges a facially plausible negligence claim. *See, e.g., Heller*, 191 F. Supp. 3d at 1360; *Caldwell v. Carnival Corp.*, 944 F. Supp. 2d 1219, 1224 (S.D. Fla. 2013); *McLean v. Carnival Corp.*, 12-24295-CIV, 2013 WL 1024257, at *5 (S.D. Fla. Mar. 14, 2013); *Holguin v. Celebrity Cruises, Inc.*, 10-20215-CIV, 2010 WL 1837808, at *1 (S.D. Fla. May 4, 2010).

### E.  Negligence based on Apparent Agency and/or Agency by Estoppel

Count V of the Complaint is a negligence claim against Defendants based on apparent agency or agency by estoppel.  In short, this claim alleges that Carnival is vicariously liable for the negligence of Sun Bahamas because Sun Bahamas was the apparent agent of Carnival.

#### 1.  The Complaint unambiguously states Count V is a *negligence* claim.

Carnival first argues that this claim should be dismissed because there is no independent cause of action for agency. [D.E. 31, p. 11].  This exact argument has been refuted repeatedly by this Court – even in the same case that Carnival relies on. *See Gayou v. Celebrity Cruises, Inc.*, 11-23359-CIV, 2012 WL 2049431 at *8 n. 4 (S.D. Fla. June 5, 2012) ("A fair reading of the substance of the claims, however, makes plain that [plaintiff] is really pleading negligence causes of action that are grounded on an agency theory of liability. The Court so construes them, their respective labels notwithstanding."); *see also Ash*, 2014 WL 6682514 at *7 (agreeing with *Gayou*).

Regardless, however, Carnival's boilerplate argument has no application here because the Complaint specifically states it is a claim for "Negligence against Defendants based on Apparent

Agency or Agency by Estoppel" [D.E. 1, p. 28].  Whereas Counts II-III are direct negligence counts against Carnival, Count V is a negligence claim under the theory of apparent agency. Considering that Rule 8(d)(2) permits alternative pleading, this claim is proper.

###### 2.  Reasonableness is a factual determination.

Carnival's second argument is that Plaintiff's belief that Sun Bahamas was Carnival's agent was unreasonable because Carnival's FAQs Website allegedly stated that the excursions were operated by independent contractors. [D.E. 31, pp. 12-13].[5]

The Eleventh Circuit has "repeatedly observed that apparent agency liability requires finding three essential elements: first, a representation by the principal to the plaintiff, which, second, causes the plaintiff reasonably to believe that the alleged agent is authorized to act for the principal's benefit, and which, third, induces the plaintiff's detrimental, justifiable reliance upon the appearance of agency." *Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225, 1252 (11th Cir. 2014).[6]  Addressing only the second element, Carnival argues that, because the FAQs page of its website calls excursion providers "independent contractors," Plaintiff's belief that Carnival and Sun Bahamas were agents cannot be deemed reasonable, which defeats her apparent agency claim. This argument, however, goes against binding precedent.

To that point, binding precedent holds that, "[u]nder the doctrine of apparent agency, just as in the case of actual agency, ***vicarious liability turns on the facts* presented**." *Franza*, 772 F.3d at 1251-52 (emphasis added); *see also Doonan v. Carnival Corp.*, 404 F. Supp. 2d 1367, 1371 (S.D. Fla. 2005) ("Courts in the Eleventh Circuit sitting in admiralty have held that... the existence

---

[5] It is well settled that, at this stage, the scope of a court's "review must be limited to the four corners of the complaint." *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002).  In fact, pursuant to binding Eleventh Circuit precedent, the general rule is that a district court does "not consider anything beyond the face of the complaint... when analyzing a motion to dismiss." *Financial Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007). There is an exception for "cases in which [1] a plaintiff refers to a document in its complaint, [2] the document is central to its claim, [3] its contents are not in dispute, ***and*** [4] the defendant attaches the document to its motion to dismiss." *Id.* (emphasis added).  In its motion, Carnival refers to two documents: (1) "a ticket for the subject shore excursion" and (2) Carnival's FAQs Website. [D.E. 31, p. 12].  As to the first, Carnival only includes a boilerplate sentence, without any substantive argument, let alone a copy of the ticket attached as an exhibit.  The ticket therefore cannot be considered.  As to the second, Plaintiff equally maintains the Court should not consider the portions of the website included in Carnival's motion because it is unknown whether such specific portions appeared in Carnival's website at or around the time Plaintiff reviewed it. The authenticity of such portions are therefore disputed, and as such, they should not be reviewed on a motion to dismiss.  Without waiving Plaintiff's position, however, Plaintiff responds to Carnival's arguments in an abundance of caution.
[6] "In Florida, agency by estoppel is nearly the same as apparent agency. The Eleventh Circuit does not even consider the two separately." *Belik*, 864 F. Supp. 2d at 1312 (citation omitted).

of an agency relationship is a question of fact."); *Warren v. Ajax Navigation Corp.*, 1995 AMC 2609 (S.D. Fla. 1995); *Archer v. Trans/American Servs., Ltd.*, 834 F.2d 1570, 1573 (11th Cir. 1988)); *Belik v. Carlson Travel Group, Inc.*, 864 F. Supp. 2d 1302, 1310 (S.D. Fla. 2011) ("generally the question of whether an agency relationship exists is a factual question").

More specifically, in *Franza*, the Eleventh Circuit addressed the very issue presented herein because, like Carnival, the defendants argued that any agency claim failed at the pleading stage based, in part, on their ticket contract referring to the parties as "independent contractors." *See Franza*, 772 F.3d at 1238. The Eleventh Circuit disagreed and explicitly held that whether the parties are considered independent contractors or agents is not determined by what they call themselves; rather, it is determined by their actual dealings with each other. *See id.* ("even if we were to look to the contract at this stage, we would not consider the [medical personnel] to be independent contractors simply because that is what the cruise line calls them").

In this case, as in *Franza*, the "obvious purpose" to be accomplished by the section relied on by Carnival in its FAQs page "was to evince an independent contractor status," but as noted in *Franza*, "such status depends not on the statements of the parties but upon all the circumstances of their dealings with each other." *Id.* (citing *Cantor v. Cochran*, 184 So.2d 173, 174 (Fla. 1966)) (emphasis added). Here, even limited to the allegations in Plaintiff's Complaint, the "circumstances of [Defendants'] dealings" demonstrate, at the very least, a question of fact concerning their status. Indeed, as in *Franza*, the FAQs page is "internally inconsistent." *See Franza*, 772 F.3d at 1238 n. 11. On the one hand, the section Carnival relies on calls excursion providers "independent contractors." [D.E. 31, pp. 12-13]. But on the other hand, the sections included in Plaintiff's Complaint demonstrates Carnival's use of proprietary language, repeatedly referring to "Carnival excursions" and/or "our shore excursions." [D.E. 1, ¶22(a)-(b)] (emphasis added). The purported "independent contractor" status is therefore not conclusive.

Similarly, the cases Carnival cites to in its motion are not conclusive either. For instance, in support of its argument, Carnival relies on the case, *Hajtman v. NCL (Bahamas) Ltd.*, 526 F. Supp. 2d 1324 (S.D. Fla. 2007). However, that case is easily distinguishable because it involved allegations of inadequate and/or improper medical care by the shipboard doctors. The Court therefore held that the plaintiff's belief was "unreasonable as a matter of **law**" because the case

law at the time[7] held that cruise lines were not vicariously liable for their medical staff as a matter of law. *See Hajtman*, 526 F.Supp.2d at 1328-29 ("Given the long standing maritime principle that carriers and shipowners are not vicariously liable for the acts of their medical staff… it is unreasonable for Plaintiff to believe that [the medical staff] were Defendant's agents."). **That is not the case with cruise lines and shore excursion operators.**

The other cases cited by Carnival are *Wolf v. Celebrity Cruises, Inc.*, 683 F. App'x 786 (11th Cir. 2017) and *Ceithaml v. Celebrity Cruises, Inc.*, 17-12956, 2018 WL 3115777 (11th Cir. June 25, 2018). While *Wolf* and *Ceithaml* are excursion cases, they are also easily distinguishable because they were both decided on motions for summary judgment, with reference to exhibits and testimony. This is a critical distinction because district courts have consistently denied cruise lines' motions to dismiss claims for apparent agency by properly relying solely on plaintiffs' allegations. *See Heller*, 191 F. Supp. 3d at 1362 (considering plaintiff's allegations "sufficient" to plead apparent agency); *Brown v. Carnival Corp.*, 215 F. Supp. 3d 1312, 1318 (S.D. Fla. 2016) ("*Brown II*") ("Plaintiff has successfully pleaded her negligence claim, Plaintiff's factual allegations are sufficient to defeat the dismissal of her apparent agency claim"); *Lapidus v. NCL Am. LLC*, 12-21183-CIV, 2012 WL 2193055, at *5 (S.D. Fla. June 14, 2012) ("Plaintiff has adequately pled his claim for apparent agency as NCL's alleged manifestations are sufficient, at the pleading stage, to cause Plaintiff to believe that the Excursion Entities had authority to act for NCL's benefit"); *Belik*, 864 F. Supp. 2d at 1311; *see also Gentry*, 2011 WL 4737062, at *6 ("Considering only the allegations in the complaint, it cannot be said that [plaintiff's] belief that an agency relationship existed was unreasonable as a matter of law.")

Herein, in support of her apparent agency claim, Plaintiff asserts: (1) Carnival allowed its name to be used in advertising of the Excursion Entities; (2) Carnival handled the arrangements of the excursion; (3) Carnival marketed the excursion using Carnival's company logo on its website and on brochures; (4) Carnival sold, provided information, and answered questions regarding the excursion through its onboard excursion desk; (5) Carnival recommended Plaintiff not participate in other excursions; (6) Plaintiff relied on Carnival's actions and/or statements; and (7) Plaintiff would not have participated in the excursion if she had known it was not operated by Carnival. [D.E. 1, ¶¶66-70]. As in *Heller* and *Brown II*, these allegations are sufficient.

---

[7] Those cases and/or holdings have since been abrogated by the Eleventh Circuit's opinion in *Franza*, 772 F.3d 1225.

Further, the Complaint explicitly alleges that the "Plaintiff reasonably relied on the above, to [her] detriment, so as to believe that the Excursion Entities [including Sun Bahamas] were the employee(s) and/or agent(s) of Carnival in choosing the subject excursion." [Id. at ¶70]. Considering these allegations, which are taken as true and construed in the light most favorable to Plaintiff, the Complaint sets out a claim for apparent agency.  Carnival's grounds for dismissal are therefore without merit and improper at this juncture of the case.

### F.  Count VII: Third-Party Beneficiary

Under Count VII, Plaintiff alleges she was a third-party beneficiary of a contract between Carnival and Sun Bahamas, which requires a plaintiff to allege: (1) the existence of a contract to which plaintiff is not a party; (2) an intent, either expressed by the parties, or in the provisions of the contract, that the contract primarily and directly benefit plaintiff; (3) breach of that contract; and (4) damages to plaintiff resulting from the breach. *Wolf*, 101 F. Supp. 3d at 1311.

Carnival claims Plaintiff fails to allege the ***second element*** with an intent by Carnival and the Excursion Entities to benefit Plaintiff.  It is undisputed that the intent of the parties is the key to determining whether a third party is recognized as an *intended* beneficiary (with rights to enforce the contract) as opposed to only an *incidental* beneficiary (with no enforceable rights under the contract).[8]  A third party is an intended beneficiary of a contract between two other parties if a direct and primary object of the contracting parties was to confer a benefit on the third party. *See Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 982 (11th Cir. 2005).

Paragraph 87 explicitly alleges that "Carnival and the Excursion Entities intended that the contract primarily and directly benefit Carnival's passengers, including the Plaintiff." [D.E. 1, ¶87].  The Complaint goes on to allege that such intent was "expressed by Carnival and the Excursion Entities" and that such intent was also "demonstrated by the provisions of the contract." [Id. at ¶¶88-89].  Those provisions are also specifically enumerated as follows:

(a) the purpose of the agreement explicitly stating that it is for the Excursion Entities to provide shore excursions to guests on Carnival's vessels; (b) prohibiting dangerous activities from forming any part of shore excursions; (c) Carnival having the right to charge its passengers the price that Carnival determines in its sole

---

[8] Florida courts have recognized three types of third party beneficiaries to a contract: (1) donee beneficiaries; (2) creditor beneficiaries; and (3) incidental beneficiaries. *See Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 981 (11th Cir. 2005). The key distinction is that the first two categories are classes of "intended" beneficiaries, who have a right to sue for enforcement of the contract, whereas the third category, "third party beneficiaries recognized as incidental beneficiaries[,] have no enforceable rights under a contract." *Id.*

discretion; (d) Carnival having the sole discretion to provide its passengers a full or partial reimbursement of the excursion ticket if a passenger is dissatisfied; (e) Carnival requiring that the Excursion Entities exercise reasonable care for the passengers' safety at all times; (f) Carnival requiring that the Excursion Entities satisfy and continue to satisfy the highest standards of quality in the industry; and/or (g) Carnival requiring that the Excursion Entity maintain insurance for any and all injuries to passengers.

[Id. at ¶89].

In *Brown II,* the Court examined the same provisions and denied defendant's motion to dismiss the claim, finding that "Plaintiff identifies the provisions of the contract, which are intended to benefit passengers such as Plaintiff." *Brown II*, 215 F. Supp. 3d at 1319 (Ungaro, J.). Thus, like *Brown II*, the seven contractual provisions included in the Complaint are enough to show that benefiting Carnival passengers, like Plaintiff, was "a direct and primary object of the contracting parties," as required.

Further, regarding the ***third element***, contrary to Carnival's argument, Plaintiff did in fact allege that Carnival – not solely Sun Bahamas – breached the contract. For instance, Plaintiff explicitly alleges that the "contract was breached by Carnival" due to Carnival's "[f]ailure to regularly and/or adequately identify the highest safety standards in the industry for the activities offered in the subject excursion, and verify that the Excursion Entities are adhering to such standards" (among other breaches). [D.E. 1, ¶90(o)].

As to Carnival's cases, none of them examined all seven provisions presented in this case and in *Brown II*. Carnival also argues that the provisions do not actually evince an intent to benefit the Plaintiff, but that requires a factual determination that is inappropriate at this stage. *See BGW Design Limited, Inc.*, 2010 WL 5014298, *5 (S.D. Fla. 2010) (The [contractual] intent of the parties is a factual matter and therefore should not be resolved on a motion to dismiss); *American Honda Motor Co., Inc., v. Motorcycle Information Network, Inc.*, 390 F. Supp. 2d 1170, 1176 (S.D. Fla. 2005) ("The intent of the parties is a factual matter that cannot be resolved on a motion to dismiss); *see also Barnett v. Carnival Corp.*, 06-22521CIVOSULLIVAN, 2007 WL 1746900, at *4 (S.D. Fla. 2007) ("the issue of intent is not appropriate for resolution on a motion to dismiss") (citing *Westinghouse Electric Supply Co. v. Wesley Construction Co.*, 414 F.2d 1280, 1281-82 (5th Cir. 1969) (reversing the district court's order dismissing a third party beneficiary claim)).

Consequently, Carnival's Motion to Dismiss Count VII should be denied.

### G. <u>Count VIII: Breach of Fiduciary Duty</u>

The last claim in the Complaint is breach of fiduciary duty under Count VIII.

The elements of a claim for breach of fiduciary duty are: (1) the existence of a fiduciary relationship; (2) breach of a duty owed by the fiduciary; and (3) proximate cause. *Combe v. Flocar Inv. Group Corp.*, 977 F. Supp. 2d 1301, 1307 (S.D. Fla. 2013). The Plaintiff's Complaint adequately alleges all of these elements.

As to the first, in order to establish the existence of a fiduciary relationship, a party must allege some degree of dependency on one side and some degree of undertaking on the other side. *See Combe*, 977 F. Supp. 2d at 1307. Generally, a fiduciary relationship is implied in law where "confidence is reposed by one party and a trust accepted by the other." *Latino Broad. Co., L.C. v. Grupo Latino de Radiodifusion, L.L.C.*, 05-21255-CIV, 2006 WL 8431816, at *2 (S.D. Fla. Jan. 12, 2006). A fiduciary relationship that is implied in law is based on the "*specific* factual circumstances surrounding the transaction and the relationship of the parties[,]" which are "developed through discovery." *Id.* (citation omitted) (emphasis in original). Further, "[a] fiduciary relationship can be implied in law even where the written contract does not establish it." *Id.*

Herein, the Complaint establishes that a fiduciary relationship existed between Plaintiff and Carnival because, as required, Plaintiff bestowed trust and confidence upon Carnival, and Carnival accepted such trust and confidence. The specific facts are alleged as follows:

> … Plaintiff bestowed complete trust and confidence upon Carnival to (a) select safe, reliable and/or reputable excursion providers for passengers (like Plaintiff); (b) offer reasonably safe excursions for passengers (like Plaintiff); (c) accurately advise passengers (like Plaintiff) concerning the excursion providers and/or the subject excursion; and/or (d) make arrangements with the excursion providers that would benefit and/or protect passengers (like Plaintiff).

> … Carnival accepted Plaintiff's trust and confidence by representing that Carnival "thoroughly reviewed," the shore excursions and that they were "safe" and "reliable" and recommending that passengers (like Plaintiff) not engage in excursions, tours or activities that were not sold through Carnival. Carnival also represented to the Plaintiff that it was acting as an agent for the Plaintiff in selecting and arranging shore excursions.

[D.E. 1, ¶¶94-95].

The above factual allegations are sufficient to demonstrate a fiduciary relationship that is implied in law. The second and third elements are also adequately alleged in paragraphs 97 and

- 15 -

L I P C O N ,  M A R G U L I E S ,  A L S I N A  &  W I N K L E M A N ,  P . A .

98, which respectively, contain the detailed ways in which Carnival breached its duty and Plaintiff's injury resulted from such breaches.

In support of dismissal, Carnival relies on *Serra-Cruz*, but its reliance is misplaced because *Serra-Cruz* was grounded on "other courts in the context of other common carriers hav[ing] concluded that common carriers do not owe fiduciary duties to their passengers." [D.E. 31-1, p. 24]. Yet the very same case cited by the *Serra-Cruz* Court, *Karkomi v. Am. Airlines, Inc.*, 717 F. Supp. 1340 (N.D. Ill. 1989), recognized circumstances where a common carrier <u>has</u> been found to owe fiduciary duties – i.e., when the common carrier (an airline) acted as an "agent in arranging a package tour." *Id.* at 1342 (citing *United Airlines, Inc. v. Lerner*, 87 Ill.App.3d 801, 803-04 (1st Dist. 1980)). The *Lerner* Court held as follows:

> The airline here had two interests. It sought to lure [plaintiff] into booking a flight on its line, but as an inducement to fly United it also sought to arrange the ski vacation in an area to which United flew…. United helped [plaintiff] plan his family's itinerary, arranged their accommodations… obtained lift tickets for use at the… ski area and determined the schedule for the [plaintiff's] departure and return. **Thus, while United was a common carrier, *it also satisfied the definition of a travel agent*…**

*Lerner*, 87 Ill.App.3d at 803 (emphasis added); *see also Johnson v. Priceline.com Inc.*, 3:11CV465 JBA, 2012 WL 1108116, at *3 (D. Conn. Mar. 30, 2012), *aff'd*, 711 F.3d 271 (2d Cir. 2013) (recognizing *Lerner's* holding that "an agent, 'who, in the interest of promoting the travel plans of a client, deals with carriers, plans an itinerary, arranges for hotel accommodations, guides and tours of each city and sets up the traveler's schedule... owes duties of service and due care to the principal'").

Like *Lerner*, Carnival had "two interests" – luring Plaintiff into booking, not only a cruise with Carnival, but also an excursion through Carnival. Also like *Lerner*, Carnival handled all of the arrangements for the subject excursion – from selecting the Excursion Entity, dealing with the Excursion Entity, promoting the subject excursion, collecting payment for the subject excursion, and explicitly "tak[ing] care of all the details." [D.E. 1, ¶¶22(b), 26, 36]. Therefore, like *Lerner*, Carnival was not only a common carrier for the cruise, but it was also an agent for purposes of the excursion, and as such, it owed a fiduciary duty to Plaintiff.

It should also be noted that the existence of a fiduciary relationship is a question of fact. *See Trumpet Vine Investments, N.V. v. Union Capital Partners I, Inc.*, 92 F.3d 1110, 1117 (11th Cir. 1996); *see also Treo By Quantum, LLC v. Oppenheimer Multifamily Hous. & Healthcare Fin.,*

*Inc.*, 11-22623-CIV, 2013 WL 5890704, at \*4 (S.D. Fla. Nov. 4, 2013).  The Plaintiff therefore pleads sufficient allegations in Count VIII to move passed the pleading stage.

Accordingly, all of Carnival's grounds for dismissal fail, and its motion should be dismissed in its entirety.

**III.**      **Sun Bahamas' Motion to Dismiss for Lack of Personal Jurisdiction**

Sun Bahamas moves to dismiss this case for lack of personal jurisdiction, but its motion is rendered meaningless due to its failure to submit an affidavit.

**A.   Standard Applied to Motions to Dismiss for Lack of Personal Jurisdiction**

"A plaintiff seeking to obtain jurisdiction over a nonresident defendant initially need only allege sufficient facts to make out a *prima facie* case of jurisdiction." *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 (11th Cir. 1999) (citing *Electro Eng'g Prods. Co. v. Lewis*, 352 So.2d 862, 864 (Fla. 1977)).  "When a defendant challenges personal jurisdiction 'by submitting affidavit evidence in support of its position, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction.'" *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (citing *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990)).

Yet "[t]he plaintiff bears the burden of proving 'by affidavit the basis upon which jurisdiction may be obtained' ***only if*** the defendant challenging jurisdiction files 'affidavits in support of his position.'" *Posner*, 178 F.3d at 1214 (citing *Venetian Salami Co. v. Parthenais*, 554 So.2d 499, 502 (Fla. 1989)) (emphasis added). "The burden, however, does not shift back to the plaintiff when 'the defendant's affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction.'" *Louis Vuitton*, 736 F.3d at 1350 (citing *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006)).

The Court must then engage in a two-part analysis to determine whether personal jurisdiction exists over a nonresident defendant. *See Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1203-04 (11th Cir. 2015).  First, the Court considers whether the defendant's activities satisfy Florida's long-arm statute. Second, if satisfied, the Court considers whether jurisdiction under the long-arm statute comports with the due process requirements of the Fourteenth Amendment. *See id.*

Florida's long-arm statute contains two provisions that confer personal jurisdiction over a nonresident defendant.  The first, Fla. Stat. § 48.193(1), lists acts that subject a defendant to *specific* jurisdiction when their activities in the forum are related to the cause of action alleged in the

complaint. *See Carmouche*, 789 F.3d at 1204.  The second provision of Florida's long-arm statute is Fla. Stat. § 48.193(2), which confers <u>*general*</u> jurisdiction over any claims against a defendant that engages in 'substantial and not isolated activity' in Florida, whether or not such activity is related to the cause of action being litigated. *See Carmouche*, 789 F.3d at 1204.

**B.** <u>**The jurisdictional allegations in Plaintiff's Complaint must be accepted as true due to Sun Bahamas' failure to submit an affidavit, or** *any* **evidence, challenging Plaintiff's allegations.**</u>

Applying the foregoing principles herein, Plaintiff alleges Sun Bahamas is subject to personal jurisdiction through section 48.193(1)(a)(9), which provides for specific jurisdiction over defendants entering into a contract that meets certain statutory requirements.  To that end, Plaintiff's Complaint contains the following jurisdictional allegations:

> At all times material hereto, the Excursion Entities [Sun Bahamas][9] entered into a contract with Carnival concerning the subject excursion, which (a) contains a choice-of-law clause designating Florida law as the governing law; (b) contains a provision whereby the Excursion Entities agree to submit to the exclusive jurisdiction of the courts of Florida; (c) involves consideration of not less than $250,000 or relate to an obligation arising out of a transaction involving in the aggregate not less than $250,000; (d) does not violate the U.S. Constitution; and (e) has at least one party of the contract that is a resident of Florida or incorporated under the laws of Florida. Therefore, the contract between Carnival and the Excursion Entities meets all requirements to satisfy a finding of specific jurisdiction under Florida Statute § 48.193(1)(a)(9).

> [D.E. 1, ¶10].

Based on the above allegations, Plaintiff satisfies the initial burden of establishing a *prima facie* basis for jurisdiction over Sun Bahamas under Florida Statute § 48.193(1)(a)(9). Sun Bahamas was therefore required to challenge Plaintiff's jurisdictional allegations "by submitting affidavit evidence in support of its position[.]" *Louis Vuitton*, 736 F.3d at 1350.  However, Sun Bahamas fails to submit *any* evidence whatsoever, let alone an affidavit, to substantiate the assertions and arguments contained in its motion. [D.E. 31].  In fact, Sun Bahamas does not even address section 48.193(1)(a)(9) in its motion at all.[10]

---

[9] Throughout the Complaint, "Excursion Entities" includes Sun Bahamas and fictitious defendant, XYZ CORPORATION(S), which Plaintiff included in the event discovery revealed additional entities were involved in the ownership, operation, and/or management of the excursion. [D.E. 1, ¶¶4, 9]. However, Plaintiff voluntarily dismissed such fictitious defendant on February 27, 2019 [D.E. 25], and as such, "Excursion Entities" refers solely to Sun Bahamas.

[10] Although page 19 of its motion references § 48.193(1)(a)(9) (among other provisions of Florida's long-arm statute), Sun Bahamas merely cites a case that only addressed jurisdiction under § 48.193(1)(a)(4) –

As a result, pursuant to well settled binding precedent, Plaintiff's jurisdictional allegations are to be accepted as true for purposes of resolving the jurisdictional issue. *See Abramson v. Walt Disney Co.*, 132 Fed. Appx. 273, 275 (11th Cir. 2005) ("the district court must accept the plaintiff's factual allegations, unless those allegations are contested by the defendant's affidavits"); *Posner*, 178 F.3d at 1215 ("To the extent such statements in the [defendant's] Affidavit do not contradict Plaintiffs' pleadings, we accept the allegations stated in the complaint as true for purposes of resolving the jurisdictional issue under the requirements of the Florida long-arm statute and the Due Process Clause."); *Madara*, 916 F.2d at 1514 (holding that even when a defendant submits evidence supporting his jurisdictional position, courts still "accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits"); *see also Canadian Steel, Inc. v. HFP Capital Markets, LLC*, 11-23650-CIV, 2012 WL 2326119, at *5 (S.D. Fla. June 19, 2012) (Altonaga, J.) (finding "the long-arm statute [was] satisfied" when defendant's affidavit was "irrelevant to the jurisdictional issue under section 48.193(1)(b)").

**C.   This Court may exercise jurisdiction over Sun Bahamas through Florida Statute § 48.192(1)(a)(9).**

As stated, Plaintiff maintains that the Court may exercise personal jurisdiction over Sun Bahamas through section 48.193(1)(a)(9), based on the shore excursion contract that Sun Bahamas entered into with Carnival.  Notably, the application of section 48.193(1)(a)(9) to shore excursion contracts is an issue that this Honorable Court already examined in the case of *Steffan v. Carnival Corp.*, 16-25295-CIV, 2017 WL 4182203 (S.D. Fla. Aug. 1, 2017) (Altonaga, J.), wherein this Honorable Court found that the provisions of Carnival's contract – *the same cruise line and the same provisions involved in this case* – are sufficient to satisfy Florida's long-arm statute.

Specifically, as discussed in *Steffan*, in 1987, the Florida Supreme Court held that an agreement with a forum selection clause could not operate as the sole basis for Florida courts to exercise personal jurisdiction over a defendant that had not engaged in any of the acts set forth in the long-arm statute. *See Steffan*, 2017 WL 4182203, at *4 (citing *McRae v. J.D./M.D., Inc.*, 511

---

not under § 48.193(1)(a)(9). [D.E. 31, p. 19] (citing *Lapidus v. NCL Am. LLC*, 2013 WL 646185 (S.D. Fla. Feb. 14, 2013) (Seitz, J.) ("Here, Plaintiff's contention that the Excursion Entities agreed to indemnify [cruise line] for his claims is insufficient because Plaintiffs negligence claims do not arise from an indemnity agreement. Plaintiffs' claims arise from [cruise line's] allegedly negligent actions onboard the ship and in Hawaii. Put another way, Plaintiffs negligence claims could be asserted regardless of whether an indemnity agreement exists between NCL and the Excursion Entities")). That case and Sun Bahamas' argument, therefore have no bearing to this case.

So. 2d 540, 542 (Fla. 1987)). As noted in *McRae* at the time, "[c]onspicuously absent from the long arm statute is any provision for submission to in personam jurisdiction merely by contractual agreement." *McRae*, 511 So. 2d at 543. Yet the provision is no longer "conspicuously absent."

Merely two years after *McRae*, the Florida legislature enacted sections 685.101 and 685.102, which stand for the proposition that parties may confer personal jurisdiction on the courts of Florida ***by contract alone***, if certain requirements are met. *Jetbroadband WV, LLC v. MasTec N. Am., Inc.*, 13 So. 3d 159, 162 (Fla. 3d DCA 2009); *see also Corp. Creations Enterprises LLC v. Brian R. Fons Attorney at Law P.C.*, 225 So. 3d 296, 301 (Fla. 4th DCA 2017). In order to properly confer jurisdiction under these sections, the contract must:

    (1) Include a choice of law provision designating Florida law as the governing law, in whole or in part;

    (2) Include a provision whereby the non-resident agrees to submit to the jurisdiction of the courts of Florida;

    (3) Involve consideration of not less than $250,000 or relate to an obligation arising out of a transaction involving in the aggregate not less than $250,000;

    (4) Not violate the United States Constitution; and

    (5) Either bear a substantial or reasonable relation to Florida or have at least one of the parties be a resident of Florida or incorporated under the laws of Florida.

*Corp. Creations*, 225 So. 3d at 301.

Thus, by promulgating the above statutes, the Florida legislature allowed contracting parties to dispense with the more restrictive Florida long-arm limitations; and by its clear terms, granted parties the very right that *McRae* and its progeny found conspicuously absent in section 48.193 – i.e., the right to confer personal jurisdiction by agreement. *Jetbroadband*, 13 So. 3d at 162-63. The statutes' effective supersession of *McRae* was therefore acknowledged by the Third District Court of Appeal in *Jetbroadband*.

The *Jetbroadband* holding was further cemented in 2013 when the Florida legislature enacted section 48.193(1)(a)(9), which explicitly added "[e]ntering into a contract that complies with [section] 685.102," to the enumerated acts that may subject a nonresident defendant to the jurisdiction of Florida courts. *See Steffan*, 2017 WL 4182203, at \*5.

When this Honorable Court examined the above statutes in *Steffan*, this Court recognized that a number of cases involving foreign tour operators (like Sun Bahamas) were incorrectly decided:

> Since *McRae* was decided, numerous courts in this District have applied the Florida Supreme Court's reasoning in that case—as followed in *Alexander Proudfoot Co. World Headquarters v. Thayer*, 877 F.2d 912 (11th Cir. 1989)—to dismiss foreign tour operators whose excursion agreements contain conferral of jurisdiction clauses similar to the one at issue here. *See, e.g., Thompson v. Carnival Corp.*, 174 F. Supp. 3d 1327, 1332 n. 3 (S.D. Fla. 2016) (finding consent to jurisdiction clause argument to be a "nonstarter" because "a clause conferring personal jurisdiction may not be enforced unless independent grounds for personal jurisdiction exist under Florida's long arm-statute" (internal quotation marks omitted) (quoting *Aronson v. Celebrity Cruises, Inc.*, 30 F. Supp. 3d 1379, 1390 n.3 (S.D. Fla. 2014))); *see also Meyer v. Carnival Corp.*, 938 F. Supp. 2d 1251, 1256–57 (S.D. Fla. 2013) (finding conferral of jurisdiction and forum selection clauses were "not dispositive of the issue of personal jurisdiction" (citing *Proudfoot*, 877 F.2d at 919))....

> As the Third District Court of Appeal recognized, courts continued to cite with approval *McRae's* language even after passage of Florida Statutes sections 685.101–.102…. "[t]hese references, however, merely parrot the rule as it relates to section 48.193 and… have no effect on the impact of sections 685.101–.102.

*Steffan*, 2017 WL 4182203, at *4-5.

This Court therefore noted that these incorrect rulings were based on courts improperly applying *McRae* and *Proudfoot*. As to the latter specifically, *Proudfoot* did not even consider sections 685.101 or 685.102, nor did it have to because the statutes were not yet applicable to the case. Based on the plain language of the statute, section 685.102 was only applicable to "an action or proceeding… *commenced* on or after June 27, 1989." Fla. Stat. § 685.102(3)(b) (emphasis added). The *Proudfoot* opinion was entered in 1989 (i.e., the same year the statutes were enacted).

Quite recently, in another matter, the Court agreed with this Honorable Court's "thorough and well-reasoned order" in *Steffan* and held that Carnival's shore excursion contract satisfied all requirements to exercise jurisdiction over the excursion operator. *See Lienemann v. Cruise Ship Excursions, Inc., et al.*, 18-21713-CIV, 2018 WL 6040659, at *3-4 (S.D. Fla. Nov. 9, 2018) (Lenard, J.). Consequently, an analysis of the current state of the law makes clear that a contract between a cruise line (like Carnival) and an excursion operator (like Sun Bahamas) is sufficient for this Court to exercise jurisdiction.

Furthermore, pursuant to Plaintiff's jurisdictional allegations, *which are accepted as true*, the contract between Carnival and Sun Bahamas meets all five requirements of sections 685.101

- 21 -

L I P C O N ,   M A R G U L I E S ,   A L S I N A   &   W I N K L E M A N ,   P . A .

and 685.102 to exercise jurisdiction over Sun Bahamas. The ***first requirement*** is satisfied because the contract "contains a choice-of-law clause designating Florida law as the governing law[.]" [D.E. 1, ¶10(a)].  Next, the **second requirement** is satisfied because the contract "contains a provision whereby [Sun Bahamas] agree[d] to submit to the exclusive jurisdiction of the courts of Florida[.]" [Id. at ¶10(b)].  The statutory amount prescribed under the ***third requirement*** is also satisfied because the contract "involves consideration of not less than $250,000 or relate to an obligation arising out of a transaction involving in the aggregate not less than $250,000[.]" [Id. at ¶10(c)].[11]  As for the ***fourth requirement***, the contract "does not violate the U.S. Constitution[.]" [id. at ¶10(d)].[12]  Lastly, the ***fifth requirement*** is met when "*either* 1) the contract bears a substantial or reasonable relation to Florida, ***or*** 2) at least one of the parties is either a resident or citizen of Florida (if a person), or is incorporated or organized under the laws of Florida ***or maintains a place of business in Florida (if a business)*.*" *Jetbroadband*, 13 So. 3d at 162 (citation omitted) (emphasis added).  Here, since it is undisputed that Carnival (a party to the contract) maintains its principal place of business in Florida, the fifth requirement is satisfied because the contract "has at least one party of the contract that is a resident of Florida or incorporated under the laws of Florida." [D.E. 1, ¶10(e)].

Accordingly, consistent with both *Steffan* and *Lienemann*, which involved shore excursion contracts from the same cruise line (i.e., Carnival), the contract between Carnival and Sun Bahamas meets all statutory requirements to exercise personal jurisdiction over Sun Bahamas.

### D. Sun Bahamas created sufficient minimum contacts to satisfy due process.

Notwithstanding the enactment of sections 685.101 and 685.102, the due process requirements of the Fourteenth Amendment must still be met. *See Corp. Creations*, 225 So. 3d at 300; *see also Jetbroadband*, 13 So. 3d at 163.  But in the commercial context, the minimum contacts analysis requires a different approach.

Pursuant to the U.S. Supreme Court, "in the commercial context, parties frequently stipulate in advance to submit their controversies for resolution within a particular jurisdiction.

---

[11] It is also noteworthy that Florida courts apply a "somewhat relaxed reading of the section 685.101 consideration requirement." *Steffan*, 2017 WL 4182203, at *6 (citing *Fons*, 2017 WL 2665069, at *4 ("[C]alculating consideration under this factor is not as limited as the [d]efendants imply. . . . As one court noted, 'even if the parties to an agreement do not exchange at least $250,000, section 685.101 may still apply if[] an aggregate of more than $250,000 arises from transactions related to the contract.'" (alterations added) (quoting *Upofloor Ams., Inc. v. S Squared Sustainable Surfaces, LLC*, 616CV179ORL37DCI, 2016 WL 5933422, at *6 (M.D. Fla. Oct. 12, 2016))).
[12] The due process analysis is discussed separately below.

Where such forum-selection provisions have been obtained through 'freely negotiated' agreements and are not 'unreasonable and unjust,' their enforcement does not offend due process." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985) (internal citations omitted); *see also Jetbroadband*, 13 So.3d at 163 (holding that, pursuant to *Burger King*, the nonresident defendant "created minimum contacts without violating the United States Constitution" by entering into a contract that complied with sections 685.101–.102).

In this case, Sun Bahamas has not and cannot claim its shore excursion contract with Carnival is unreasonable, unjust, or obtained through means other than free negotiation. Indeed, pursuant to Plaintiff's uncontested jurisdictional allegations, Sun Bahamas has "reach[ed] out to cruise lines in Florida and establish[ed] long-term partnerships with them;" it has "deriv[ed] a substantial portion of their revenues from their business with Florida-based cruise lines;" and it has "periodically travel[ed] to Miami to meet with cruise line executives for purposes of maintaining the business relationships and/or obtaining new business[.]" [D.E. 1, ¶11]. Furthermore, Sun Bahamas should have reasonably anticipated being haled into a Florida court when (1) it entered into the contract with a Florida entity (Carnival), (2) the contract designated Florida law as the governing law, and (3) the contract included a provision whereby Sun Bahamas agreed to submit to the jurisdiction of the courts in Florida. [Id. at ¶10].

In a similar case, this Court found that the nonresident defendant "should have reasonably anticipated being haled into a Florida court" when it contracted with a party that "maintained an office in Florida," and the contract "contained a choice-of-Florida-law provision" as well as a "consent to the jurisdiction of the courts of this State." *Travelocity.com LP v. Pier 35 Events, Inc.*, 25 Fla. L. Weekly Fed. D 21, 2014 WL 2999208, at *9 (S.D. Fla. 2014); *see also Burger King*, 471 U.S. at 474 ( "the foreseeability that is critical to due process analysis... is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there"). Ultimately, the Court in *Travelocity* held that "because [defendant] contractually agreed to personal jurisdiction in Florida, the usual due process analysis need not be done. It is sufficient that the waiver provision is freely negotiated and is not unreasonable or unjust." *Travelocity*, 2014 WL 2999208, at *10 (internal citation omitted).

In this case, Sun Bahamas entered into the same type of agreement involved in *Travelocity*; and as held in *Steffan* and *Lienemann*, "the type of forum selection and conferral of jurisdiction clauses at issue here do not offend the United States Constitution." *Lienemann*, 2018 WL 6040659,

at \*5 (citing *Steffan*, 2017 WL 4182203, at \*6).  The provisions were obtained through "freely negotiated" agreements, they are not "unreasonable and unjust," and as such, their "enforcement does not offend due process." *Lienemann*, 2018 WL 6040659, at \*5 (citing *Burger King*, 471 U.S. at 472 n.14 (1985); *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)).

Accordingly, Sun Bahamas created and maintained sufficient minimum contacts, which comports with the due process requirements of the United States Constitution.

### E.  Plaintiff is a Third-Party Beneficiary to the Defendants' contract.

Having established that the statutory and due process requirements are met, the final step is to determine whether Plaintiff may avail herself of the contract's conferral of jurisdiction clause.

At the outset, the Eleventh Circuit has recognized that a "range of transaction participants, **parties and non-parties**, should benefit from and be subject to forum selection clauses." *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1299 (11th Cir. 1998) (citation omitted) (emphasis added). "**[A] third-party beneficiary status is not required**." *Id.* (citation omitted) (emphasis added). All that is required for a non-signatory litigant (like Plaintiff) to enforce a contractual provision against a signatory litigant (like Sun Bahamas) is that the signatory "be 'closely related' to the dispute such that it becomes 'foreseeable' that it will be bound." *Id.*  Here, Sun Bahamas contracted with Carnival to provide shore excursions for Carnival passengers.  The subject accident occurred while Sun Bahamas was providing its excursion to a Carnival passenger, the Plaintiff.  Sun Bahamas is therefore undoubtedly "closely related" to the dispute.

Additionally, even though third-party beneficiary status is not required, Plaintiff (as a Carnival passenger) does in fact have such status.  As addressed above, under Count VII,[13] Plaintiff asserts and sufficiently pleads a claim for breach of a third-party beneficiary contract – a claim that Sun Bahamas does not contest in its motion or with an affidavit.  Therefore, as a third-party beneficiary, Plaintiff could enforce the consent to jurisdiction provision contained in Defendants' contract, consistent with this Honorable Court's ruling in *Steffan* and another Court's ruling in *Lienemann*, both of which involved the same cruise line (Carnival) and the same contract terms.

### F.  Plaintiff's Motion for Jurisdictional Discovery

The Plaintiff believes she has established Sun Bahamas is subject to jurisdiction in this forum, such that its Motion to Dismiss should be denied.  But in the event this Honorable Court disagrees, Plaintiff respectfully requests to conduct limited jurisdictional discovery.

---

[13] The Plaintiff refers to the argument set forth above and incorporates same here.

Federal courts have discretionary power to order the discovery of facts necessary to ascertain their competency to entertain the merits. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). To that end, "[t]he Eleventh Circuit has recognized that '[r]esolution of a pretrial motion that turns on findings of fact—for example, a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2)—may require some limited discovery before a meaningful ruling can be made.'" *Mainker v. Classic Cruises Holdings S. De R.L., LLC*, Case No. 11-21400-CIV-Jordan (S.D. Fla. Sept. 15, 2011) (citations omitted) [D.E. 59].

*Mainker* (and the cases cited therein) therefore makes clear that a right to jurisdictional discovery exists. *Id.*; *see also Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997) (holding that resolution of a "motion to dismiss for lack of personal jurisdiction" is among the type of motions that "require some limited discovery" before a meaningful ruling can be made); *see also Oppenheimer*, 437 U.S. at 351, n.13 ("where issues arise as to jurisdiction or venue, discovery is available to ascertain facts bearing on such issues").

## IV.    Motion for Leave to Amend

Should this Honorable Court grant Defendants' motion or any portion thereof, Plaintiff respectfully requests leave to amend.

Respectfully submitted,

LIPCON, MARGULIES,
ALSINA & WINKLEMAN, P.A.
*Attorneys for Plaintiff*
One Biscayne Tower, Suite 1776
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone No.: (305) 373-3016
Facsimile No.: (305) 373-6204

By:  */s/ Jacqueline Garcell*
**JASON R. MARGULIES**
Florida Bar No. 57916
jmargulies@lipcon.com
**JACQUELINE GARCELL**
Florida Bar No. 104358
jgarcell@lipcon.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 3, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being

served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to electronically receive Notices of Electronic Filing.

By:   */s/ Jacqueline Garcell*
**JACQUELINE GARCELL**

## SERVICE LIST
*Mellnitz v. Carnival Corp., et al.*
**Case No. 18-24933-CIV-Altonaga/Goodman**

**Jason R. Margulies, Esq.**
jmargulies@lipcon.com
**Jacqueline Garcell, Esq.**
jgarcell@lipcon.com
LIPCON, MARGULIES,
ALSINA & WINKLEMAN, PA
One Biscayne Tower, Suite 1776
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone No.: (305) 373-3016
Facsimile No.: (305) 373-6204
*Attorneys for Plaintiff*

**Jeffrey E. Foreman, Esq.**
jforeman@fflegal.com
**Noah D. Silverman, Esq.**
nsilverman@fflegal.com
FOREMAN FRIEDMAN, PA
One Biscayne Tower, Suite 2300
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone No.: (305) 358-6555
Facsimile No.: (305) 374-9077
*Attorneys for Defendant, Carnival*

**James H. Perry, II, Esq.**
perry@maritimeattorneys.com
**Patrick J. Ryan, Esq.**
patrick@maritimeattorneys.com
PERRY & NEBLETT, P.A.
1650 SE 17th Street, Suite 200
Fort Lauderdale, Florida 33316
Telephone: (954) 500-1000
Facsimile: (954) 500-2000
*Attorneys for Defendant, Sun Bahamas*